NELLIE RATCLIFF, RESPONDENT, v. CRAWFORD RATCLIFF, APPELLANT.*

Kansas City Court of Appeals.   December 6, 1926.

---

*Corpus Juris-Cyc References: Appeal and Error, 4CJ, p. 799, n. 34; Divorce, 19CJ, p. 83, n. 31; p. 89, n. 7, 8, 11, 19; p. 91, n. 34; p. 120, n. 92; p. 142, n. 52; p. 249, n. 43; p. 264, n. 58; p. 266, n. 81; p. 268, n. 90; Pleading, 31Cyc, p. 393, n. 41.

*Harry M. Dungan* and *Eastin & McNeely* for respondent.

*Tibbels & Bridgeman* for appellant.

ARNOLD, J.—This is an action for divorce in which plaintiff by her original petition seeks to have adjudicated and determined the interests of the parties litigant to certain real estate and personal property. The suit was instituted in Holt county, Missouri, but a change of venue was taken by each of the parties and the cause finally was tried in division No. 1 of the Buchanan county circuit court at St. Joseph.

The facts developed are that the parties were married in Holt County on March 26, 1910. No children were born of the marriage.

It appears that plaintiff is about fourteen years the senior of defendant. Prior to the said marriage plaintiff had lived on a farm in Holt county with her widowed mother. Defendant, a single man, then about nineteen years of age, came to said county from the State of Virginia and entered the employ of plaintiff's mother as a farm hand. Both plaintiff and defendant had lived with plaintiff's mother on the farm for a period of about eighteen years when plaintiff's mother died. After the death of plaintiff's mother the two continued to live on the farm for a year or two previous to their marriage and for a time thereafter. The evidence shows that at the time of the said marriage plaintiff was the owner of two tracts of land, one consisting of eighty acres and the other of 105 acres, both of which were encumbered. At this time defendant possessed a little property, probably a team or two and a few farm implements, but no real estate. After their marriage the parties prospered and within a few years had accumulated considerable personal property and had paid off the encumbrances on plaintiff's lands.

It appears that in 1917 the parties acquired by purchase or trade a tract of 200 acres from one Fred Fleenor. Plaintiff's eighty-acre tract, valued at $160 per acre, was exchanged for the 200-acre tract which was also valued at $160 per acre, the difference being paid in cash. In order to raise the amount a loan of $6700 was placed on plaintiff's 105-acre tract and a loan of $15,000 on the 200-acre farm obtained in the deal. The deed for the 200 acres from Fleenor was made to defendant and plaintiff as husband and wife, creating thereby an estate in the entirety in this tract. It is plaintiff's contention that defendant procured this deed to be so made without her knowledge or consent and for the purpose of defrauding her, and that the arrangement between her and defendant was that plaintiff was to have an interest in the 200 acres in excess of defendant's interest, in the amount of $12,800 which was the value of the eighty-acre tract which went into the deal as part payment. After the purchase of the 200-acre tract the parties moved from the 105-acre tract where they had been living to the 200-acre farm and continued to reside thereon until their separation at which time the indebtedness of $6700 on the 105-acre tract had been paid. At the time of the separation there were on the farm some forty-five head of cattle and about 100 head of hogs, in which plaintiff claims she and defendant had an equal interest.

Sometime in the fall of 1923, one Fred Wallace who had been employed to gather corn moved, with Jennie his wife, into a small house on the farm near the dwelling occupied by plaintiff and defendant. Wallace and his wife continued to live there until sometime in December when Fred Wallace left and Jennie moved into the house occu-

pied by plaintiff and defendant. Jennie remained a short time and then went to Oklahoma where she stayed for about two weeks at which time plaintiff wrote her and sent money for her return to Holt county. It appears the defendant cannot write. Jennie returned in January, 1924, and went to the home of plaintiff and defendant where she remained until the latter part of June that year when she finally left. Plaintiff's testimony shows that adulterous relations between Jennie Wallace and defendant began in February, 1924, and continued daily until the latter part of June following. The house in which the parties resided consisted of four rooms, viz., two bedrooms, a kitchen and another room, all being on the first floor. One bedroom at the southeast corner was occupied by plaintiff and defendant and the one at the southwest corner by Jennie Wallace, the two rooms having a communicating door. The kitchen was the northeast room, and, in going from the kitchen into the west bedroom, it was necessary to pass through the east bedroom.

Plaintiff testified that when she would arise in the morning to build the fires and prepare breakfast, defendant would get out of his bed and go into the room occupied by Jennie and would get into bed with her; that she saw him do this from the latter part of February until the latter part of June when plaintiff left home. It is in evidence that when defendant went into the bedroom of Jennie Wallace, the door between the two rooms was always left open; that plaintiff would continue the preparation of breakfast and when the meal was ready she would go into Jennie's bedroom and call her and defendant to breakfast. Plaintiff testified she remonstrated with defendant on his relations with Jennie and also had some mutual friends speak to him about it; that defendant became offended thereat and said she would only "make things worse." Considerable trouble developed between the parties over the woman which resulted in plaintiff leaving her home and going with some relatives who had come to visit them, thus leaving defendant and Jennie Wallace together in the home. However, Jennie remained only a day or so when she left. It appears plaintiff remained away from her home until the latter part of August, 1924, when she returned and continued to live and cohabit with defendant as his wife until January 15, 1925, when she again left and thereafter instituted this suit.

The petition alleges adultery by defendant after his marriage with plaintiff and that he has offered plaintiff such indignities as to render her condition intolerable in this, to-wit:

"That he has neglected the plaintiff and for a long period of time devotedly paid attention to one Jennie Wallace, who, notwithstanding plaintiff's objections and protests, defendant kept in her home, where plaintiff was compelled to witness endearments outrageous to her position as wife of defendant; that defendant has, particularly

since his attentions to the said Jennie Wallace began, frequently gone away from home leaving plaintiff sick and almost helpless, with no provisions for fire or other comforts, and plaintiff has been compelled to suffer alone and wait upon herself as best she could; that the defendant is quarrelsome, faultfinding and abusive to plaintiff, and has by his treatment of plaintiff made her condition unbearable and intolerable.''

The petition then proceeds to plead the history of the real estate in question as above detailed and the interests of the parties therein. The prayer asks for divorce and that the court ascertain and determine the value of the eighty acres of land in excess of the amount contributed by defendant toward the purchase of the 200-acre farm, and award plaintiff such excess and one-half the personal property. The record discloses that in the original petition the prayer did not include a demand for alimony, but that, after the testimony was all in, the court permitted plaintiff to amend her prayer by interlineation so as to include therein a request for alimony. The ruling of the court in allowing such amendment was vigorously opposed at the time by defendant, and is the basis of a charge of error on this appeal.

The answer admits the marriage, as alleged in the petition, that plaintiff and defendant had lived together as husband and wife until January 15, 1925, and generally denies all other allegations. Upon the issues thus made the cause was submitted to the court, resulting in a judgment and decree in favor of plaintiff, granting her an absolute divorce, restoration of her maiden name and alimony in the lump sum of $4000. Motions for a new trial and in arrest were overruled and defendant has appealed.

In the decree the court found that it is without jurisdiction in this proceeding to find and adjudge the right, title and interest of the parties in and to the real estate or personal property mentioned in the petition and the evidence. No objection was registered to this part of the decree and it therefore disappears from the case.

Three points are raised in this appeal. First, it is urged that plaintiff was not entitled to a divorce because the only offense proved sufficient to entitle her to a divorce was that of adultery. It is urged that, under the evidence, if defendant committed adultery he did so with the knowledge and consent of plaintiff, and she is therefore guilty of connivance which would bar her right to divorce. It is also argued that the testimony shows that plaintiff resumed cohabitation with defendant after knowledge of the alleged adultery and she thereby condoned the offense; that the subsequent misconduct, as shown in the evidence was wholly insufficient to revive the alleged adultery as grounds for divorce.

Condonation is defined as the conditional forgiveness or remission by a husband or wife, of a matrimonial offense which the other has committed. [1 Bouvier's Law Dict., p. 585.] The word also has been defined as "A blotting out of an imputed offense against the marital relation so as to restore the offending party to the same position he or she had before the offense was committed." [Odom v. Odom, 36 Ga. 286, (1893) P. D. 313.] It is defendant's position that condonation herein was implied from the fact that plaintiff and defendant lived together as husband and wife after the alleged adulterous offense.

It has been held under conditions where a husband's infidelity was condoned, such infidelity was revived by his subsequent cruelty to her (Moorhouse v. Moorhouse, 90 Ill. App. 401; Fisher v. Fisher, 93 Md. 298, 48 Atl. 833); or by subsequent adultery (19 L. Q. R. 365); or by subsequent desertion. And so, in the case at bar, the testimony of plaintiff is that repeated acts of cruelty were indulged by defendant against plaintiff after she returned to live with him, such as neglect when she was ill; leaving her at home alone to care for and feed the stock and provide herself with wood, and even assaulting her at one time. No testimony was offered by defendant and therefore the testimony of plaintiff in this behalf is undisputed. Under the above rulings such conduct on the part of defendant rendered the condonement inoperative. Every condonation is upon the implied condition that the party forgiven will thereafter abstain from the commission of a like offense and will treat the forgiving spouse in all respects with conjugal kindness. It is not necessary therefore that the subsequent injury be of the same kind, or proved with the same clearness, or sufficient of itself when proved to warrant a divorce or separation. Accordingly a course of unkind and cruel treatment will revive condoned adultery, though the latter be a ground of divorce *a vinculomatrimonii*, while the former will, at most, only authorize a separation from bed and board. [Johnson v. Johnson (N. Y.), 14 Wend. 637; Warner v. Warner, 31 N. J. Eq. 225; Wagner v. Wagner, 6 Mo. App. 573; Atteberry v. Atteberry, 8 Cr. 224.] Applying this rule, it is clear the court did not err in granting a decree of divorce on the showing made.

It is defendant's contention that plaintiff connived at the adultery charged and therefore is barred from urging such act as ground for divorce. We think this position is untenable. The general rule in this respect is stated in 19 C. J. 90, section 12, as follows:

"Mere passive permission of misconduct, however, does not make the party guilty of connivance, if he does nothing to encourage the other to commit the offense and does not directly or indirectly throw opportunities therefor in the way; and connivance cannot be implied from mere negligence, folly, dullness of apprehension or indifference."

A corrupt intent in the mind of one party that the other shall commit the offense is an essential element of connivance. [Herriford v. Herriford, 169 Mo. App. 641, 648, decided by this court.] Plaintiff's testimony, and that is all we have here, is to the effect that she made repeated attempts, pathetically ineffectual, to induce her husband to refrain from his adulterous indulgencies with Jennie Wallace. There is no showing, even inferentially, that the trial court erred in the respect charged. There is nothing in the numerous citations of defendant inconsistent with the well-established application of the law.

For his second charge of error it is asserted that there is reversible error in the action of the court in permitting plaintiff to amend her petition by interlineation after the evidence was all in. We think it unnecessary to go into any lengthy discussion of this charge. Section 1274, Revised Statutes 1919, would seem to determine this point against defendant's contention by its provision that the court may "at any time before final judgment, in furtherance of justice . . . amend any pleadings . . . when the amendment does not change substantially the claim or defense by conforming the pleadings to the facts proved."

It is discretionary with the trial court to permit amendments to be made out of time. [Laughlin v. Leigh, 226 Mo. 620, 639, 126 S. W. 743.] The discretion of the trial court in allowing amendments will not be interfered with on appeal unless it has been abused. [Drainage Dist. v. Railway Co., 236 Mo. 94, 113, 139 S. W. 330.] Defendant makes no showing that the trial court abused its discretion in this respect. Moreover, it is of record that the amendment was not of the body of the petition, but of the prayer which is not a part of the cause of action alleged, but is a plea for relief under the petition and proof. We hold against defendant on this point.

Third, and finally, defendant urges the court erred in granting excessive alimony. As stated, the amount was $4000. It is urged there was not sufficient proof of the value of the stock and other property remaining on the farm and in the possession of defendant. In support of this contention, defendant cites Blair v. Blair, 131 Mo. App. 571, Syl-2, wherein it is said:

"In determining whether the allowance, by the trial court, of alimony in favor of the wife, who is adjudged entitled to a divorce, is reasonable, the property and earning capacity of the husband must be primarily considered, but the determination must also be had with reference to the means owned by the wife in her own right and particularly that portion of her means which was given to her by her husband."

There was testimony tending to show that defendant is now and has been since the separation in possession of the 200-acre farm,

and that he has made no accounting to plaintiff of the proceeds thereof. In addition there is evidence tending to show that the loan on the 105-acre and the 200-acre farms were $2500 in excess of the amount needed for the cash payment on the purchase of the 200-acre farm, and this amount defendant received and never accounted for.

In respect to the allowance of alimony, the general rule is stated in 19 C. J., 266, as follows:

"The adequacy or excessiveness of an allowance of permanent alimony depends largely upon the circumstances of each particular case."

All the facts in evidence doubtless were considered by the trial court in determining the amount of alimony allowed and being undisputed, the court was justified in naming the sum it did. While not strictly an action in equity, the question of alimony partakes largely of the nature of an equity suit, and the trial court must be permitted to exercise its discretion in ruling upon the facts shown in evidence. We are not convinced the allowance is excessive.

We find no reversible error of record and the judgment and decree are affirmed. *Bland, J.,* concurs; *Trimble, P. J.,* absent.