JAMES A. WIRTHMAN, RESPONDENT, v. ELLA E. WIRTHMAN, APPELLANT.—39 S. W. (2d) 404.

Kansas City Court of Appeals. Opinion filed May 25, 1931.

*Hume & Smith, Fenton Hume* and *Carlin Smith* for respondent.

*Daniel E. Bird* and *Robt. M. Murray* for appellant.

ARNOLD, J.—This is an action for divorce. A decree for plaintiff was entered after defendant's demurrer to plaintiff's evidence was overruled. Defendant stood on her demurrer.

Briefly stated, the facts of record are that plaintiff is sixty-one years of age and defendant thirty-nine. Defendant is a niece of plaintiff's first wife and for a time lived in plaintiff's home before the death of his first wife: The parties were married May 7, 1919, and lived together as husband and wife until October 22, 1929, at which time plaintiff left his home and instituted this suit in the circuit court of Jackson County, Missouri. Defendant filed answer to the petition and later filed an amended answer and cross-petition. The cause was tried ond the pleadings thus made.

The petition is formal, alleges plaintiff is a resident of Kansas City, Jackson County, Missouri, and has resided within the State of Missouri more than one whole year next before filing said petition; that plaintiff and defendant were lawfully married at Kansas City, Kansas, on May 7, 1919, and continued to live together, except at intervals, from and after their marriage until on or about October 22, 1929; that plaintiff faithfully demeaned himself and discharged all his duties as the husband of defendant, and treated her with kindness and affection; that defendant disregarded and violated the marriage relation and offered to plaintiff such indignities as to render his condition intolerable, in that defendant is possessed of an ungovernable temper and upon the slightest provocation gave vent thereto, both in the home and in public; that without justification or cause defendant is, and has been, jealous of plaintiff, manifesting such jealousy at home and in public, thereby making life impossible and unendurable to plaintiff; that she habitually criticized, nagged and found fault with him and his actions toward her without justification, and by reason thereof plaintiff has been unable to please her; that plaintiff's conduct toward Eugene Wirthman, plaintiff's child by his former marriage, was highly disrespectful; that she often cast remarks reflecting on his character, such conduct being so abusive, disrespectful and of such a character as to render his son unwelcome in the home and eventually forcing him to leave; that defendant at all times displayed a hostile and unwelcome attitude toward all of plaintiff's relatives, thereby making them unwelcome visitors in his home; that defendant often demanded that plaintiff vacate and leave the home; in her numerous fits of rage and temper defendant became hysterical, rendered herself obnoxious to the neighbors and as a consequence compelled plaintiff to change his residence; that on such occasions defendant threatened the life of plaintiff; said conduct and treatment not only destroyed the peace, harmony and quietude of the home, but tended to shatter the nerves of plaintiff and caused him to be driven from home on numerous occasions; that plaintiff's life was rendered unbearable aand he was eventually forced

to leave his home on October —, 1929, since which time plaintiff and defendant have been living separate and apart; that during said marriage relation, at divers times, defendant secretly and clandestinely communicated with other men and often met men outside the home, and at such times was guilty of conduct highly improper as a wife. The petition further states no issue was born of this marriage and that the offenses therein complained of arose and were committed in the State of Missouri and while both parties resided therein. The prayer is for a decree of divorce and such other and further relief as to the court may seem meet and proper.

The answer admits the marriage, as pleaded in the petition, that the parties continued to live together as husband and wife and that no child was born to said union. Excepting these admissions, the answer is a general denial. Later an amended answer was filed, making admissions as in the first and generally denying as therein stated. A cross-petition also was duly filed alleging and admitting matters set out in the answer and alleging defendant faithfully demeaned herself and discharged all her duties as the wife of plaintiff, but that plaintiff, disregarding his duties as the husband of defendant, offered her such indignities as to render her condition intolerable; that plaintiff is possessed of a violent and ungovernable temper and has continually exhibited evidences of the same, and has cursed and humiliated defendant, both privately and in the presence of plaintiff's son and guests in their home; on frequent occasions he has struck and beaten defendant with his fists, pieces of furniture and other objects; abused and threatened her until she was obliged to undergo treatment by a physician therefor; that for a number of years plaintiff and his son have openly pursued a course of abusive and discourteous treatment of defendant for the purpose of making her life so miserable she would be obliged to separate from plaintiff; that plaintiff has stated on numerous occasions that both he and his son would continue such conduct until they either drove defendant away from the home or caused her to become insane; plaintiff, on numerous occasions, has allowed his son, in plaintiff's presence, to speak disrespectfully to defendant and curse and order her out of the house, to her embarrassment and humiliation; plaintiff, for a long time, has refused to provide defendant with sufficient means to properly clothe herself and has given her only sufficient money to maintain her existence and has stated he would continue this course and would dispose of all the property and conceal it so that eventually defendant would be unable to obtain any support from him; that on a number of occasions, plaintiff, by threats and abuse, has forced defendant to execute deeds jointly with him, conveying property to his son, without consideration; on such occasions plaintiff refused to tell defendant what properties were being transferred and for

what purpose; plaintiff has continually threatened to do violence to defendant and on one occasion brought her a drink from a drug store which poisoned her and made her violently sick; defendant is informed and believes some substance was put in said drink by plaintiff to cause her harm; following out his system of embarrassing and terrorizing defendant, plaintiff has employed numerous people to watch her and follow her and attempt to make engagements with her away from home so that he could photograph her with them, and on one occasion employed one Lillian B. White as housekeeper in their home, against the wishes and desires of defendant, for the purpose of spying on defendant and attempting to gather some evidence upon which to base action for divorce; on various occasions, plaintiff left their home and stayed away for a month or six weeks at a time without informing defendant of his whereabouts and without explaining why he was away; during their married life plaintiff has associated and kept company with other women and has frequented places where liquor was sold and drunk liquor with other women, and in other ways conducted himself unbecoming a gentleman; has frequently and continuously told defendant she was ignorant and unfit to be his wife; that he did not love her nor care for her; that he has urged her, on many occasions, to sue for divorce and threatened her if she did not do so; because of her refusal to comply with this demand plaintiff has struck her with his fist, chairs and other articles, causing her face and nose to bleed and causing bruises on her arms and body; on some occasions he has taken weapons to bed with him and kept them under his pillow in order to keep defendant in a constant state of fear and apprehension; plaintiff has told their friends and acquaintances that defendant was insane, thus embarrassing and humiliating defendant; that by reason of the foregoing acts, conduct and treatment, defendant's life has been made miserable and her health impaired; by his constant campaign of spreading poisonous remarks about defendant, plaintiff has ruined her friendship with a great number of people and impaired her reputation and made her life with plaintiff impossible. Defendant states she is now and has been a resident of Kansas City, Jackson County, Mo., for more than one whole year last before filing this amended answer and cross-petition. The cross-petition alleges plaintiff is possessed of considerable property and income, the value of which is to defendant unknown; that the property held in the name of plaintiff and others for him is reasonably worth $250,000. The prayer is for a divorce, permanent alimony, attorney fees, expenses of prosecuting this defense and costs. Plaintiff's answer to the cross-petition was a general denial.

The cause was tried upon the pleadings thus made, resulting in a decree for plaintiff. Motions for new trial and in arrest were overruled and defendant has appealed. Later, motions for temporary alimony and attorney fees, duly filed, were sustained by the court.

At the close of plaintiff's evidence defendant asked the following declaration of law, in the nature of a demurrer to the evidence:

"Comes now the defendant, at the close of plaintiff's case, and demurs to plaintiff's evidence for the following reason: Because the plaintiff has failed, under his petition and all the evidence, to establish a cause of action in his behalf."

The court refused, whereupon defendant announced she would stand upon her demurrer. The court entered the following decree and judgment:

"Now on this day come again the same parties hereto, and the hearing of the evidence is resumed and at the conclusion of the evidence on behalf of plaintiff, defendant files demurrer to plaintiff's evidence, which is by the court taken up, fully heard and considered and by the court overruled, to which action and ruling of the court the defendant excepts. Now defendant elects to stand upon her demurrer and refuses and declines to further proceed with the trial of this cause, whereupon the court finds the issues in favor of the plaintiff and against the defendant on plaintiff's petition and further finds the issues in favor of the plaintiff and against the defendant upon defendant's cross-petition, that the allegations in plaintiff's petition are true; that plaintiff is the innocent and injured party and entitled to the relief prayed.

"Wherefore, it is adjudged and decreed by the court that the bonds of matrimony heretofore contracted between plaintiff and defendant be and the same are hereby dissolved and for naught held and plaintiff forever freed from the obligations thereof.

"It appearing to the court that defendant is unable to pay the costs herein, it is further ordered and adjudged by the court that the costs herein be paid by plaintiff and that execution issue therefor.

"It is further ordered and adjudged by the court that plaintiff pay the defendant as her attorneys' fees the sum of one thousand ($1000) dollars and that defendant have execution therefor."

Appellant assigns error as follows: (1) The court erred in overruling defendant's demurrer to the evidence. (2) In holding that under the law and the evidence plaintiff was entitled to recover. (3) In holding the court has jurisdiction to render judgment in favor of plaintiff. (4) In holding plaintiff had not condoned the matters brought out in plaintiff's testimony and in not striking such testimony from the record. These charges are developed in order, under points and authorities, and so treated in the argument. As is required of us in reviewing trials in divorce cases, we have carefully read all the record, consisting of 569 pages of the printed abstract. The evidence consists entirely of that introduced by plaintiff in support of his petition.

The first point urged in support of this appeal is that there was error in overruling defendant's demurrer to plaintiff's evidence, and,

in this connection it is argued plaintiff's evidence shows that for a number of years plaintiff carried on a consistent campaign of spying upon defendant, having her followed by employees and detectives; that he employed persons to work at her home to check up on her, tapping the wires of her telephone and hiding in the basement to listen to her telephone conversations; that plaintiff's son was permitted to live with them, in the same house, and that this son was the cause of a good portion of the trouble; that for a number of years plaintiff had been transferring various properties to his minor son, and in other ways conducting himself in a manner which would indicate his purpose to incite defendant to anger and destroy any confidence she had in him; that it is plain from the testimony of plaintiff that he was endeavoring by consistent efforts, over a long period of time, to make his wife so unhappy she would divorce him, and failing in this, he finally left her. In the use of this argument, defendant applies the well-established rule of "clean hands." It is true plaintiff's evidence shows he used every endeavor to learn of the misbehavior of his wife and his testimony shows beyond question that he succeeded in learning facts which fully support the charges in the petition. There is no admission in his testimony that the defendant knew of plaintiff's efforts in this connection, and if she was unaware of them, such efforts could not have influenced her misbehavior or justified it. It must be kept in mind that plaintiff's petition is bottomed on, and charges indignities. Section 1801, Revised Statutes 1919 (1350, Revised Statutes 1929), provides as grounds for divorce, if either party "shall be guilty of such cruel or barbarous treatment as to endanger the life of the other; or shall offer such indignities to the other as shall render his or her condition intolerable; . . . " It must be held the petition charges indignities, generally and specifically. Acts of cruelty may not be sufficiently grave to endanger life and yet may amount to such indignities as to render the plaintiff's condition intolerable. [McCartin v. McCartin, 37 Mo. App. 471.] As to what constitutes indignities depends upon the facts in each case. [Kempf v. Kempf, 34 Mo. 211; McCann v. McCann, 91 Mo. App. 1.] Association and adultery with vile and disreputable persons constitutes indignities. [Wheeler v. Wheeler, 63 Mo. App. 298.] For an indignity to be intolerable in a statutory sense, it must amount to a species of mental cruelty. [Holschbach v. Holschbach, 134 Mo. App. 247, 114 S. W. 1035; Becherer v. Becherer, 299 S. W. 61; Ryan v. Ryan, 300 S. W. 1046.] Vile and abusive language frequently indulged in will constitute ground for divorce. [Rose v. Rose, 129 Mo. App. 175, 107 S. W. 1089.]

The cause is before us for consideration *de novo*. In divorce cases we are required to weigh and pass upon the evidence and in doing so we should defer to the findings of the trial judge on conflicting testimony, if any, as to indignities alleged to have rendered the con-

dition intolerable. [Grath v. Grath, 261 S. W. 718.] Thus it is necessary for us to refer somewhat to the evidence upon which the trial court based its rulings and decree. It will not be necessary for us to set out all the evidence adduced in support of plaintiff's allegation of indignities. Plaintiff testified defendant was possessed of an ungovernable temper and gave many instances of her use of violent and sometimes obscene language toward him. He also testified defendant frequently indulged in the excessive use of intoxicants and that on numerous occasions she went out with other men and stayed until late hours of the night. In these statements plaintiff was corroborated by other witnesses. Defendant, in her brief, does not contend plaintiff failed to prove the indignities charged.

Considerable testimony was introduced by plaintiff in the form of depositions taken at Memphis, Tenn., where defendant visited on occasions, concerning acts committed by defendant there in 1925. There is some evidence that plaintiff knew, at least in part, of some of defendant's actions in Memphis, as of that date, but there is no showing that plaintiff had full knowledge of her actions there. According to these depositions, defendant in Memphis went out with men of more or less questionable character, and that she became intoxicated on various occasions and committed adultery while there. Defendant contends plaintiff condoned all these acts on her part. On cross-examination, plaintiff admits defendant asked his forgiveness for all her said misdeeds, and she now urges these matters should not have been considered by the court because they were condoned by plaintiff.

It has been held every condonation is upon the implied condition that the party forgiven will thereafter abstain from commission of like offenses and will treat the forgiving spouse, in all respects, with conjugal kindness. It is not necessary that subsequent injury be of the same kind, or proved with the same clearness, or be sufficient of itself when proved, to warrant a separation or divorce. Accordingly a course of unkind and cruel treatment will revive condoned adultery. [Ratcliff v. Ratcliff, 221 Mo. App. 944, 949, 288 S. W. 794, and cases therein cited.]

The testimony shows defendant not only had numerous affairs in Tennessee but during the summer of 1929, before this suit was filed and just prior to the separation, she engaged in an affair with a man in Kansas City, Mo.; that she had several affairs with men in Kansas City; that she used vile and abusive language toward her husband and in the presence of other persons; that she admitted improper conduct with one B———; that on numerous occasions defendant told plaintiff to get a divorce. The trial court was right in holding the doing of said acts was a repetition of her acts in Tennessee, and therefore defendant was without right to urge condonation. [O'Neil v. O'Neil, 264 S. W. 61.] It is urged the trial court erred in refusing

to strike from the records the testimony procured in Tennessee by deposition and admitted in evidence. We hold the ruling of the court in this respect was proper. We find the testimony of record is sufficient to support the allegations of the petition and to sustain the decree.

Defendant insists plaintiff's evidence is insufficient to show he had resided in Missouri the statutory period of one year next preceding the filing of his petition. This charge is without merit. In the first place, in her amended answer and cross-petition, defendant avers she ''is now and has been a resident of Kansas City, Jackson County, Missouri, for more than one whole year last before filing this amended answer and cross-petition.'' The cross-petition was filed February 3, 1930, and alleges defendant was married to plaintiff May 7, 1919, and continued to live with him as his wife until October 22, 1929.

There is much evidence in the record which shows conclusively plaintiff met the requirements of the statute as to residence. Furthermore, from the record, we find the case was tried in Kansas City, Jackson County, Missouri, and the petition charges the acts of defendant complained of were committed within the State of Missouri, while parties resided therein. The proof in this respect was ample and the point is ruled against defendant.

For reasons above stated we rule the trial court did not err in holding plaintiff was the injured and innocent party, and that the court had jurisdiction to render judgment for plaintiff. In fact, from the record before us, and the further fact that plaintiff's evidence was not refuted, we cannot conceive how the court could have held otherwise.

The judgment is affirmed. *Bland, J.,* concurs; *Trimble, P. J.,* absent.