WILLIAM A. LAWTON *vs.* HELEN ORR LAWTON.

JULY 28, 1950.

PRESENT: Flynn, C.J., Capotosto, Baker, Condon and O'Connell, JJ.

FLYNN, C. J.  This petition for absolute divorce was tried
in the superior court and resulted in a decision granting
the husband's petition on the ground of the wife's adultery
and awarding to him the custody of two minor children.
The case is here on respondent's bill of exceptions to that
decision.

The following undisputed facts appear in the evidence.

Petitioner and respondent were married on July 27, 1942 and one child, William A. Lawton, Jr., was born of this marriage. Petitioner was then in the United States navy and following two years' continuous service in the Pacific was discharged and returned home to find that his wife was pregnant by another man. After discussing the problem with respondent petitioner agreed to forgive her offense and to adopt her second child when born. It was also understood and agreed that all parties would benefit if they moved to other surroundings; that he would enlist in the army; and that she and the children would join him when he became settled and would send for them.

Petitioner accordingly enlisted and was sent to Germany, where he executed the petition for adoption of respondent's second child. Under army regulations he could not have his family there until he had acquired the rating of sergeant. By diligent application petitioner obtained promotions and finally achieved that rating. He then wrote for his wife and family to come to Germany. By letter of February 24, 1947 she not only refused to carry out the agreement made at the time of the condonation but also requested a divorce from him. He received no word from her between that date and February 26, 1949 when he returned home on a furlough. During the whole period of service in Germany she had been receiving an allotment of $100 monthly and other moneys which he sent to her from time to time.

The testimony otherwise on material issues is in positive conflict. Omitting unnecessary details, the testimony for petitioner in substance and effect showed the following facts. When he returned from Germany he and his nephew went to the tenement where his wife was living and found it occupied by a young man twenty-one years of age, who elsewhere in the evidence was described as a "baby sitter" named Bob. The children were not there but were found at the home of respondent's married girl friend in sole charge of another "baby sitter." Petitioner then located

his wife at a corner cafe in a booth drinking beer with a young man who was later introduced as Henry. Elsewhere it appeared that this identification of Bob and Henry may have been reversed.

Petitioner requested to see her alone and respondent reluctantly left her friend and later admitted to petitioner in substance that she was closely acquainted with both Bob and Henry who were brothers; that she frequently went with either of them to a cafe or dance hall; and that she had been living in her own tenement with Bob and Henry who had paid all or part of the rent. She also told petitioner, according to his testimony, that when she had expressed an intention of going back to him Henry remonstrated by breaking her nose.

There was other evidence that petitioner's nephew had visited the house on an earlier occasion to see the children and after some delay was admitted by Bob. At that time the conditions he described tended to corroborate her later admission to petitioner. The evidence for petitioner in general showed that respondent was disposed to seek the close companionship of Bob and Henry; that she preferred them to her husband; that she had the opportunity and desire to be with at least one of them under suspicious conditions which were willfully created by herself and were so contrary to the marriage covenant that unless rebutted they justified an inference of illicit intercourse.

On the other hand respondent denied that she had made such admissions to her husband and that she had illicit intercourse with Bob or Henry or any other man since the condonation. She admitted close acquaintance with them and frequent visits to a cafe or dance hall with either or both. However, she gave an explanation of the presence of Bob or Henry in her home when she was there and also when she was in the cafe. Further she stated why she refused to join her husband when she wrote to him requesting a divorce and also explained the cause of her nose injury. Her testimony in all these respects was

considerably different from the description of those incidents as related by petitioner.

The trial justice apparently was not convinced by her explanations and referred to the reason she assigned for not going to Germany and in asking for the divorce as "silly." In his decision he characterized petitioner as a sincere man honestly devoted to his wife in spite of her previous offense, and as having a forgiving nature to the extent of being willing to do anything that would give her and the children some happiness regardless of consequences to himself. On the other hand he found that respondent showed no appreciation of this attitude; that she fell far short of conducting herself as a respectable married woman; and that in substance on all the evidence respondent's conduct had lifted the bar of condonation and revived the original offense so as to warrant the granting of a divorce on the ground of adultery.

The sole and controlling question here is whether respondent's subsequent conduct was sufficient to avoid the defense of condonation and revive the original ground for divorce. Respondent contends that only a repetition of the same kind of offense would forfeit such condonation; that there is no direct evidence that she had subsequently committed adultery; and that the evidence therefore fails to establish a breach of any condition of the admitted condonation or the marriage covenant.

In this state condonation is always conditional. It is based upon a condition implied by law that the condoned offense will not be repeated, that the offending spouse will give no just cause for complaint in the future, and that the aggrieved spouse will be continually afterward treated with conjugal kindness. *Egidi* v. *Egidi*, 37 R. I. 481. See also *Grant* v. *Grant*, 44 R. I. 169; *Mason* v. *Mason*, 46 R. I. 43. Moreover, the forgiveness must be voluntary and intentional. *Sayles* v. *Sayles*, 41 R. I. 170. It also has been held that proof of cruelty in a much lesser degree than would of itself be a ground for divorce may be sufficient

to bar the defense of condonation and revive the original ground of extreme cruelty. *Egidi* v. *Egidi* and *Grant* v. *Grant, supra.*

. Whether the same principle, that is, forfeiture of condonation by commission of a lesser and different offense, is applicable in the case of adultery has not been specifically decided here so far as we are informed. But apart from statute the weight of authority elsewhere seems to be that such lesser offense will avoid the condonation and revive the original ground for divorce, particularly if the later offense be of a kindred character. 1 Nelson on Divorce (2d ed.) 390, 391. *Young* v. *Young,* 323 Ill. 608; *Bravo* v. *Bravo,* 93 N. J. Eq. 56; *Ratcliff* v. *Ratcliff,* 221 Mo. App. 944; *Hilbert* v. *Hilbert,* 168 Md. 364. In this category some authorities have placed *Mason* v. *Mason, supra.*

In the instant case, however, it is unnecessary to determine that particular question, because in our judgment there is evidence here which reasonably supports an inference of respondent's subsequent commission of the same offense of adultery which has not been satisfactorily rebutted. The trial justice found petitioner to be honest, worthy of belief, and of a forgiving nature. If his testimony concerning respondent is believed, she in effect admitted living illicitly with one of the two brothers in her own tenement for which he paid the rent in whole or in part. In addition there was independent evidence of other facts and suspicious circumstances created by her which at least tend to corroborate her admission of such guilty conduct. Certainly they show that respondent willfully persisted in a course of conduct with either Bob or Henry which, in the absence of satisfactory explanation and rebuttal, would justify a reasonable inference that she was guilty of adultery since the condonation. Her attempted explanation of such conduct and circumstances was found by the trial justice to be inadequate and unconvincing as a whole. In our judgment the evidence, though conflicting, supports the conclusion implicit in the trial justice's decision that she

338

had again committed the same kind of offense against the marriage covenant, thereby forfeiting the defense of condonation and reviving the original ground for divorce.

The respondent's exception is overruled, and the case is remitted to the superior court for further proceedings.

*James J. McAleer,* for petitioner.
*Edwin O. Halpert,* for respondent.