Wanda Lee **TRILLER**, a Minor, by Joseph Triller, Next Friend, and Joseph Triller and Mary Triller, Appellants,

v.

Rudolph **HELLWEGE**, Respondent.

No. 49955.

Supreme Court of Missouri,

Division No. 1.

Dec. 9, 1963.

Motion for Rehearing or to Transfer to Court En Banc Denied and Opinion Modified on Court's Own Motion Jan. 13, 1964.

Hale W. Brown, Kirkwood, Thomas W. Wehrle, Clayton, for appellants.

Samuel Richeson, Dearing, Richeson & Weier, Hillsboro, for respondent.

HOUSER, Commissioner.

This is an action in two counts arising out of a collision between an automobile and an eight-year-old girl on U. S. Highway 61 in Perry County. In Count 1 Wanda Lee Triller sued for $100,000 for personal injuries. In Count 2 her parents sued for $15,000 damages for loss of earnings, hospitalization expenses, medical costs and drugs. The jury rendered a verdict for defendant. Judgment was entered for defendant on the verdict.

Plaintiffs gave notice of an appeal "to the St. Louis Court of Appeals from the Overruling of their Motion for a New Trial * * *." On its own motion the court of appeals, lacking jurisdiction, transferred the cause to this Court. Defendant has filed a motion to dismiss on the ground that the appeal was taken from an unappealable order, to a court without jurisdiction, and that the notice of appeal is insufficient to confer jurisdiction upon this Court. While the appeal should have been taken from the judgment rendered on the verdict and not from the order overruling the motion for new trial, Supreme Court Rule 82.04, V.A.M.R., and while the mistake has caused unnecessary inconvenience and delay, we consider that plaintiffs intended and in good faith attempted to appeal from a final judgment and that the notice of appeal inadvertently designated the overruling of the motion for new trial instead of the judgment rendered on the verdict as the order from which the appeal was intended to be taken, and it will be so treated. Terrell v. Missouri-Kansas-Texas R. Co., Mo.

Sup., 303 S.W.2d 641, and cases cited, 1. c. 649[11]. Section 477.080, V.A.M.S., provides that in the event a case is improperly sent on appeal from a lower court to a court of appeals when the same should have been sent to the Supreme Court it is the duty of the court of appeals to transfer it to the Supreme Court, and the case shall be proceeded with in the court to which it is transferred "as if the same had gone there directly from the trial court." We have jurisdiction by reason of the transfer order of the court of appeals and because the appeal involves more than $15,000. The motion to dismiss the appeal is overruled.

The case was submitted to the jury on humanitarian failure to stop, slacken speed, swerve or warn. Appellants, hereinafter designated plaintiffs, have assigned certain procedural errors. Respondent, hereinafter designated defendant, contends that the judgment is free of error, but that any procedural errors would be harmless since plaintiffs did not make a submissible case of humanitarian negligence.

U.S. Highway 61, a 20-foot concrete highway, runs generally north and south through Longtown. The weather was clear and dry. The accident occurred at 10 or 10:30 a.m. Wanda Lee's parents were building a house in Longtown on the east side of the highway. Across the highway and somewhat south of the house under construction there was a grocery and hardware store. Wanda Lee bought some candy in the store, and when she left she dashed out of the door. At that time defendant, driving a 1949 Chevrolet, was proceeding south through Longtown on the highway. Wanda Lee jumped off the porch of the store, ran toward the highway, started across and was struck by the left front fender of defendant's automobile near the center line of the pavement. Defendant's car left skid marks 10 feet long, 2 feet east of the center line.

Wanda Lee did not recall getting hit by an automobile, remembered nothing about the accident, or whether in her deposition she had stated that she came out of the door

of the store and ran across the street; that she jumped off the porch; that she stopped and looked; saw a car coming, and thought "she could beat him."

These parts of defendant's deposition were introduced as admissions against interest as a part of plaintiffs' case:

"Q. And as you were driving along and approaching where this occurred, do you have an occasion to remember how fast you were driving your automobile?

"A. No, I looked at my speedometer before I hit Longtown and I know I was going below forty and I slowed down some, say about twenty-five or thirty.

"Q. Twenty-five or thirty? A. Uh huh.

\* \* \* \* \* \*

"Q. Did she come down the steps or did she jump off the porch? A. Jumped off the porch.

"Q. And she was running down? A. That's right.

"Q. I understand that she was running, is that right? A. That's right.

"Q. Now, did the little girl come up to the edge of the road and stop? A. No, sir.

"Q. She kept right on running, didn't she? A. She kept right on running.

"Q. But you had seen her come out of the store? A. No, not out of the store. I saw her jump off the porch.

\* \* \* \* \* \*

"Q. Why didn't you try to swerve your car to miss her?

"A. No, after I hit her I just pulled her off the highway as quick as I could get on the right side.

"Q. Yeah. I'm talking about before you hit her. Did you do anything besides put your brakes on? A. No, sir.

\* \* \* \* \* \*

"Q. And how far up the road were you when you saw her come off the porch from where you actually struck her?

"A. Oh, I say twenty, thirty feet, I said that awhile ago already.

\* \* \* \* \* \*

"Q. Did you blow your horn? A. No, sir, I didn't have any time."

Plaintiffs' traffic engineer testified as follows: The distance between the edge of the store porch and the edge of the pavement was 26 feet 1 inch. The average running speed of an eight-year-old girl is approximately 6 to 8 m. p. h., which is 9 to 12 feet per second. It would take a young girl, at a speed of 8 m. p. h. two and one-third seconds to run from the edge of the porch to a position in the path of the automobile; four seconds to run from the porch to the center line of the highway. An automobile traveling 25 m. p. h. travels 37½ feet a second and travels 44 feet a second at 30 m. p. h. In four seconds an automobile going 25 m. p. h. would travel 140 feet, and at 30 m. p. h. it would travel 176 feet. Reaction time is ¾ of a second. At 25 m. p. h. a car travels 27½ feet during reaction time. The stopping distance of a 1949 Chevrolet on a concrete surface at 25 m. p. h., including reaction time, is 57½ feet; at 30 m. p. h. total stopping distance is 76 feet. At 25 m. p. h. considering the deceleration factor, it would take defendant 1.6 seconds to travel 30 feet during a stop. Considering the reaction time of ¾ of a second and the stopping time of 1.6 seconds, it would take 2.35 seconds for defendant to stop after plaintiff started moving toward his path. Assuming that plaintiff started from the front porch and that defendant had a reaction time of ¾ of a second, and that he was traveling 25 m. p. h., it would take 2⅓ seconds both for him to stop and for plaintiff to get there.

Defendant, 65 years old at the time of the accident, testified to these facts: Approaching the store as he drove south in Longtown he was traveling 25 m. p. h. at all times looking forward ahead and to his right, ob-

serving the highway and objects alongside the road. He saw Wanda Lee jump off the porch and she was running fast. At that time he was going 25 m. p. h., and was 25 or 30 feet from the point of impact. When he saw her jump off the porch he applied his brakes with all his might as hard as he could. After the car struck the girl it stopped "right then," right about where it hit her. The skid marks were over 20 feet long, in the southbound lane. Before the impact he was traveling in the right-hand lane, and when he stopped he was "very little" over the center line, which was caused by the car skidding. On cross-examination he testified that he was 25 or 30 feet back when he saw her jump off the porch; and that she was 25 feet from the center of the pavement when he first saw her; that it was 15 or 20 feet from the porch to the edge of the highway and another 10 feet to the middle of the highway. He did not know whether any cars obstructed his view or whether she ran out from behind another car. He did not know how far he was from her when she ran onto the pavement. When he put his brakes on she was running towards the highway. He did not blow his horn, but swerved just a little and hit her just about the center line. He did not swerve his car to the right to miss her because there was a car sitting there. His tires and brakes were in good condition and his horn worked.

Ernest Bergman saw the girl run out into the highway when defendant's car was 15 feet away, going 20 m. p. h. The girl was about 2 feet across the center line when the car hit her. Defendant's witness Edgar Benson, who was following defendant's car, testified that defendant was traveling 20 or 25 m. p. h., and that he saw the girl standing next to the shoulder. Witness Bergman testified that she did not "stand out there."

■ We are of the opinion that plaintiffs made a submissible case of humanitarian failure to stop, considering the evidence in the light most favorable to plaintiffs, as we are obliged to do in this case.

De Lay v. Ward, 364 Mo. 431, 262 S.W.2d 628. Defendant's duty to act arose when Wanda Lee came into a position of imminent peril. She came into a position of imminent peril when defendant saw, or by the exercise of the highest degree of care could have seen, Wanda Lee moving toward the path of the automobile, apparently intending to continue into its path and apparently oblivious of its approach. Williams v. Ricklemann, Mo.Sup., 292 S.W.2d 276; Wright v. Osborn, 356 Mo. 382, 201 S.W.2d 935. In this case the jury could have found Wanda Lee oblivious (which widens the zone of peril) and that she came into a position of peril, imposing upon defendant the duty to act, at the moment defendant first saw her, as she was jumping off the porch, running fast toward the highway. From that point to the point of impact, which the jury could have found occurred 2 feet beyond the center of the highway, Wanda Lee traveled approximately 36 feet at 6–8 m. p. h., or 9–12 feet per second. This required 3–4 seconds. Defendant was traveling 25 m. p. h. ($37\frac{1}{2}$ feet per second) at the time he saw Wanda Lee jump off the porch. The stopping distance for a 1949 Chevrolet traveling 25 m. p. h. on a concrete surface, including reaction time, is $57\frac{1}{2}$ feet. The jury could have found that 4 seconds before the collision—at the time Wanda Lee came into a position of peril—defendant's automobile was from 81 to 119 feet north of the point of collision; that defendant, with brakes that were "working good," could have stopped his car within $57\frac{1}{2}$ feet, including reaction time, or within 2.35 seconds after the occasion to stop arose, but that defendant, with as much as 1.65 seconds in time and 81–119 feet in distance available within which to stop, negligently failed to do so. See Edwards v. Dixon, Mo.App., 298 S.W.2d 466, 469, 470, [1–6].

It is true that the only testimony relating the position of the little girl to that of the automobile at any particular time was that given by defendant and witness Bergman; that defendant testified that his automo-

bile was only 25 or 30 feet away from the place where she ran out onto the highway, when he saw her jump off the porch, running fast; and that Bergman testified that defendant's car was only 15 feet back (north) when she ran out into the highway. The jury, however, was not obliged to accept this testimony, but was privileged to disbelieve it and find from other evidence in the case that the automobile was 81 to 119 feet north of the point of impact at the time she jumped off the porch, running toward the highway.

■ Plaintiffs' first point is that the court erred in giving Instruction No. 4, which submitted defendant's defense to humanitarian Instruction No. 1. Instruction No. 4 follows:

"The court instructs the jury with respect to the issue of negligence submitted in Instruction No. 1, that if you find and believe from the evidence that on the occasion in question Wanda Lee Triller, a girl nine years of age, was on the shoulder of Highway 61 in the village of Longtown, Missouri, on the West side of said highway, and if you further find that at the said time and place the defendant, Rudolph Hellwege, was driving his automobile Southwardly over and along said highway *and that the girl, Wanda Lee Triller, moved from the shoulder of the said highway and toward and in front of the automobile being operated by the defendant and that she was struck by the said automobile, and if you further find that prior to the time that Wanda Lee Triller moved from the shoulder of the said highway that she was at a place where she was in no danger of being struck and injured by the defendant's automobile,* and if you further find that when the defendant, Rudolph Hellwege, saw Wanda Lee Triller or by the exercise of the highest degree of care could have seen her in a position of imminent peril of being struck and injured by defendant's automobile that Mr. Hellwege could not thereafter with safety to himself and with the means and appliances at hand have stopped his mo-

tor vehicle, slackened the speed thereof, swerved its course or given a timely warning and thereby have avoided coming in contact with the said Wanda Lee Triller, then you are instructed that under the law the plaintiffs are not entitled to recover under said Instruction No. 1 and your verdict will be in favor of the defendant, on both Counts 1 and 2 of plaintiffs' petition, with respect to said issue." (Our italics.)

Plaintiffs contend that Instruction No. 4 unduly restricted the zone of peril and improperly withdrew from the consideration of the jury Wanda Lee's obliviousness, which widened the zone of peril to a time and place prior to her leaving the shoulder, and improperly withdrew defendant's testimony that he applied his brakes when Wanda Lee jumped *from the porch* (testimony from which the jury could have found that she entered the zone of peril at *that* time).

By Instruction No. 4 defendant sought to be relieved of liability under the humanitarian doctrine on the basis that when Wanda Lee moved *from the shoulder of the highway,* where she was out of danger of being struck, into the path of the automobile defendant did not thereafter have the ability to avoid the contact. The giving of Instruction No. 4 was reversible error because that defense was untenable under defendant's own testimony. Defendant himself testified that he saw Wanda Lee jump off the porch running fast out towards the highway, and that when he saw this he put on his brakes "with all [his] might as hard as [he] could," and that she "kept on running," i. e., did not hesitate or stop before trying to cross the pavement. Defendant thus testified to facts from which the jury could find the element of obliviousness, which considerably widened the zone of peril beyond the immediate path of the automobile, and beyond the zone of peril as limited by Instruction No. 4. Under this evidence the jury could have found, and should not have been restricted from finding, that the zone of peril extended as far

back as the store porch, some 26 feet 1 inch from the edge of the concrete highway. The jury should not have been restricted to a zone of peril commencing when Wanda Lee *left the shoulder,* but Instruction No. 4 erroneously did restrict the jury to a consideration of that very narrow zone of peril which extended from the point where the shoulder meets the concrete highway to the path of the automobile, (at most a width of 6 feet). In thus narrowing and limiting the zone of peril the available distance within which defendant would have to stop to avoid a collision was so greatly shortened that it would have been a manifest impossibility for him to have stopped, and therefore the giving of Instruction No. 4 was tantamount to the direction of a verdict for defendant.

Respondent's claim that No. 4 is a converse humanitarian instruction must be disapproved for the reason that verdict-directing Instruction No. 1, given on behalf of plaintiff, permitted the jury to find that the little girl was oblivious and that the zone of peril commenced when Wanda Lee jumped from the porch.

Respondent further contends that plaintiff did not raise this objection in the motion for new trial, and therefore it is not for consideration on appeal, but respondent has inadvertently overlooked assignment of error No. 3 of the motion for new trial, which clearly raises the precise point.

In this ruling we have considered Lucas v. Blanks, Mo.Sup., 362 S.W.2d 736, upholding Instruction D-4 in that case (a defensive instruction in a humanitarian case involving injuries to a child who ran out into an intersection and was struck by an automobile) as against the contention that it narrowed and limited the zone of imminent peril. The difference is that in the Lucas case the instruction was not so worded as to so restrict the zone of peril, plaintiff's contention having arisen out of her misconstruction of the word "intersection," and the instruction left the jury free to find that plaintiff was in imminent peril from the time she took her first step into the intersection.

Reversible error having been committed in the giving of Instruction No. 4 in this respect we need not consider plaintiffs' other complaints about that instruction, or the points relating to the refusal of Instruction A, a cautionary instruction, and the final argument of defendant's counsel, for these questions need not and likely will not reoccur on a new trial.

Judgment reversed and cause remanded for a new trial.

COIL and WELBORN, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.