KINZEY, Administrator, *Appellant*, v. KINZEY *et al.*

Division One, May 8, 1893.

1. **Husband and Wife:** DIVORCE: ADULTERY: DIVESTING TITLE. A husband who has caused land to be conveyed to his wife and her children by him, cannot, on subsequently obtaining a divorce from her on the ground of her adultery, have the title to the land vested in himself.

2. ———: ———: ———: ———: EQUITY. Equity will not grant such relief on the ground that the property was obtained from the husband by the imposition and deceit of the wife, where the facts only show that he was mistaken in her moral worth and virtue.

*Appeal from Lafayette Circuit Court*—HON. RICHARD FIELD, Judge.

AFFIRMED.

*William Aull* for appellant.

(1) A party who by means of the confidential rela-
tions between the parties by deceit and imposition
obtains property of the other will be compelled, in a
proper case, by a court of equity, to restore the same
to the party injured. *Dickerson v. Dickerson,* 39 N. W.
Rep. (Neb.) 429; *Huguenin v. Beasley,* 14 Ves. 290;
*Taylor v. Taylor,* 8 How. 183; *Blandy v. Kimber,* 24
Beav. 148; *Goddard v. Carlisle,* 9 Price, 169; *Boney v.
Hollingsworth,* 23 Ala. 69. (2) A court of equity will
scrutinize the matter from its inception. It is not a
forfeiture, but a setting aside because of deceit, imposi-
tion and failure of consideration. *Murphy v. DeFrance,*
101 Mo. 151. (3) The defendant, Theodore A., not
being an heir of the body of defendant, C. E. Kinzev,
by Christian Kinzey begotten, nor capable of being
such, is not entitled to any interest in the real estate
under the deed read in evidence, and the court should
so declare in doing complete justice in the premises
and dispose of the whole matter. *Reyburn v. Mitchell,*
106 Mo. 365; *Sneathen v. Sneathen,* 104 Mo. 201. (4)
The court erred in rejecting evidence offered by appel-
lant and this court may consider such evidence as
received in arriving at a conclusion. *Keiser v.
Gammon,* 95 Mo. 232. (5) This court will consider the
evidence in the cause regardless of the finding of the
circuit court when the preponderance of evidence
is against it, and will render such decree as under the
evidence ought to be rendered. *Rawlins v. Rawlins,*
102 Mo. 563; *McElroy v. Maxwell,* 101 Mo. 294; *Morey
v. Staley,* 54 Mo. 419.

*U. G. Phetzing* for respondents.

(1) All transfers of property which were actually
executed before the divorce decree continue valid and

binding. 2 Bishop on Marriage & Divorce, sec. 705; *Flood v. Flood*, 5 Bush. 167; *Orr v. Orr*, 8 Bush. 156. A court of equity never lends its aid to enforce a forfeiture. *Messersmith v. Messersmith*, 22 Mo. 369; *Lasar v. Baldridge*, 22 Mo. App. 362. (2) The legitimacy of the child, Theodore, cannot be questioned, and all the evidence as to its illegitimacy was incompetent. Abbott's Trial Evidence, p. 88; 1 Taylor on Evidence [8 Eng. Ed.] p. 129; Starkie on Evidence [6 Am. Ed.] p. 136. (3) In an equity case where the trial court has the witnesses personally before it, and there is abundant evidence to sustain its finding of facts, the supreme court will not interfere and reverse such finding, unless it is clear it should have been otherwise. *Judy v. Bank*, 81 Mo. 404.

BRACE, J.—On the ninth of April, 1874, the plaintiff Christian Kinzey and the defendant Clara E. Kinzey were lawfully married, and thereafter lived together as husband and wife until the month of November in the year 1888, when they separated. Afterwards in August, 1889, at the suit of the said Christian Kinzey, a decree of divorce was granted him by the circuit court of LaFayette county, on the ground of adultery committed by his said wife, during the marital relation, with one John A. Catron.

It appears from the evidence that at the time of the marriage the said Christian Kinzey was a farmer and a widower with a family of seven children by a former wife, "most of them small." That the said Christian and Clara lived happily together on his farm in said county from the time of their marriage until the spring of the year 1884, when he sold his farm and moved to the town of Higginsville in said county. That during all that time the said Clara was a faithful and industrious wife, kind to him and to his children

by his first wife. In April, 1884, Kinzey sold his farm for $10,000, in payment of the purchase price for which, he took another farm at $5,000, and for the remainder received promissory notes bearing eight per cent. interest, secured by deed of trust on the premises sold; two of them, amounting to the sum of $2,450, he had made payable to his wife, the said Clara, and delivered them to her; at this time she had three living children by him born of the marriage, one of whom afterwards died in the year 1887, and the other two, Florence E. and Frank M., are made parties defendant in this suit. These children were of tender years, and it would seem the children of the said Christian by his former wife had then been reared and settled in life apart from their father and his wife, except perhaps the youngest son.

About this time Kinzey bought a lot in Higgins-ville for $25 from one P. M. Gaw, and on the twenty-eighth of March, 1884, had the deed therefor executed by the said Gaw and wife convey the same to his wife, the said Clara, in fee-simple, and erected a small frame house thereon, in which he thereafter lived with his family for a time. Afterwards he bought another lot from one Asbury for $300, and on the twenty-fifth of April, 1885, had the deed therefor, exe-cuted by the said Asbury and wife, convey the same "to the said Clara Elizabeth Kinzey, and unto the heirs of her body begotten by Christian Kinzey, her present husband, forever."

It appears from the evidence that in the year 1884 and part of 1885, Kinzey had in his employ and board-ing with him the said John A. Catron; that in the latter part of the month of May, 1885, his wife commit-ted adultery with the said Catron at his home in Hig-ginsville during his absence in New Orleans. And there was some evidence tending to prove that she had been guilty of the same act with Catron on another occa-

sion either in the month of January or February preceding; but the weight of the evidence is, that the adulterous intercourse *first* commenced in May, and there was evidence tending to prove that it was repeated at intervals afterwards. The plaintiff testified that he "first discovered about their intercourse in May, 1886." He says he then found some letters from John Catron in his wife's trunk which "satisfied" him "of the criminal intercourse of his wife with John Catron." Nevertheless, they continued to live together as husband and wife until November, 1888. In December, 1885, Mrs. Kinzey had another child born to her named, Theodore, who the plaintiff alleges is not his child, and who is made a defendant in this suit. About this time Kinzey commenced the erection of a large and commodious brick house on the Asbury lot, which he testifies cost about $6,000, and that Mrs. Kinzey indorsed the notes for $2,450, which he had given her, returned them to him, and that he got them cashed and that the proceeds, except $500, went into this building.

In November, 1888, Kinzey went to California and about the same time his wife went to her relations in Indiana. Upon his return to Missouri he instituted the divorce suit which resulted in the decree before mentioned, and on the eighth of October, 1889, instituted this suit in which he seeks to have the title acquired by the said Clara and her children to said real estate by virtue of said deeds from Gaw and Asbury, divested from them and invested in him. The judgment of the trial court was for the defendants, and the plaintiff appealed. Since the appeal was taken, the plaintiff died and the appeal is prosecuted by his administrator, John W. Kinzey.

I. By the statute law of this state, a married woman who commits adultery forfeits dower in the property of her husband (Revised Statutes, 1889, sec.

4508), affords a good cause of action to him for a divorce from the bonds of matrimony (sec. 4500), and if found guilty in such action, forfeits "all rights and claims under and by virtue of the marriage" (sec. 4508). While the title of Mrs. Kinzey and her children to the property in question was acquired during the marriage and indirectly from her husband and she was found guilty of adultery in the divorce suit, yet these facts did not operate a forfeiture of any of her rights to the property, for the simple reason that those rights were vested rights, acquired by grant, and not "under and by virtue of the marriage," and upon which the sentence of divorce had no effect.    Bishop's New Work on Marriage & Divorce, sec. 1623.    But counsel for appellant seem to contend that this case is one calling for the interposition of a court of equity in the interest of morality, upon some theory of fraud to be deduced from the premises by reason of the confidential relations existing between husband and wife, a fraud not constructed upon the theory of any fraudulent act done, or representation made by the defendant inducing the conveyance of the property to her, but simply upon a breach of the confidence that the plaintiff then had that the defendant was and would continue to be to him a faithful wife.

The evidence leaves us in no doubt as to the considerations that induced him to purchase, improve and have the property deeded to his wife.    He was a man of mature years, in possession of all his faculties; with the kind and faithful assistance of his wife, his older children of the first marriage had been reared and provided for.    Those by her were of tender years.    He was about to make a a important and radical change in his mode of life.    The circumstances of that change naturally suggested the propriety of his making some provision for her, and his young children by her, against

the accidents of a new and untried field of action, and he asserts in his petition that his object in having the title vested in her and in improving the property as he did, was to make such a provision for her and to put his children by her upon an equality with his children by the former marriage.      There is not a particle of evidence tending to prove that he was influenced in this action in any manner whatever by his wife.      On the contrary, it was evident that he acted solely in obedience to the prompting of his own unbiased, free will, and as the result of his own convictions of duty.

In view of his estate and the situation of his affairs, so far as they can be discerned in the evidence, the provision was a reasonable one.      It was freely made and solemnly executed, without fraud or undue influence, and upon what principles can a court of equity set it aside?      It may be true that at the time this settlement was made, Kinzey may have thought that, as his wife always had been, so she would thereafter always continue to be, faithful to her marital vows, and that if he had known that she would thereafter prove false to them he would not have made the settlement upon her and her children that he did make.      But that he was mistaken in this reasonable expectation, as subsequent events proved, affords no pretext for the intervention of a court of equity to deprive her of property which he had, upon good consideration, theretofore voluntarily settled upon her; and certainly none to deprive his children by her of the property settled on them.

A court of equity can and will interfere to restore to a party injured, property which has been obtained from him by imposition or deceit.      But in this case no property was obtained from the plaintiff by imposition or deceit.      He was simply mistaken in the moral worth and virtue of one of the objects of his bounty.      From the consequences of such a mistake of judgment, a court

of equity cannot relieve him. The judgment of the circuit court is affirmed. All concur except BARCLAY, J., absent.