Mary Ellen GREGG, Plaintiff-Respondent,

v.

Paul W. GREGG, Defendant-Appellant.

No. 24574.

Kansas City Court of Appeals.

Missouri.

June 5, 1967.

John C. Russell, Kansas City, for appellant.

C. William Kramer, Piedimonte & Cochran, Independence, for respondent.

CROSS, Judge.

This suit for divorce was filed by plaintiff Mary Ellen Gregg. Her petition is grounded on allegations that her husband, the defendant Paul W. Gregg, subjected her to general indignities. Defendant's only pleading is in the nature of a general denial praying that plaintiff be denied a decree of divorce. He has sought no affirmative relief for himself. Trial on December 27, 1965 resulted in a judgment granting plaintiff a divorce and awarding her $75.00 per month alimony. Defendant timely filed a motion for a new trial which the trial court overruled.

■ Defendant gave notice of an appeal from the "Order Overruling Defendant's Motion for a New Trial." The action of the trial court in overruling a motion for a new trial is not an appealable order. The appeal should have been taken from the judgment and not from the order overruling the motion for new trial. Civil Rule 82.04, V.R.M.R. However, instead of dismissing the appeal we shall consider that defendant intended and in good faith attempted to appeal from a final judgment and that the notice of appeal inadvertently designated the order overruling the motion for a new trial, instead of the judgment of the court, as the judicial act from which the appeal was intended to be taken, and it will be so treated. State v. Kendrick, Mo.Sup., 383 S.W.2d 740; Triller v. Hellwegge, Mo. Sup., 374 S.W.2d 104.

■ Defendant's appeal complaints are (1) that plaintiff did not prove herself to be the innocent and injured party "because of acts of infidelity" and (2) because the evidence "strongly indicated that at best, from plaintiff's standpoint, both parties would be entitled to a divorce and, therefore, a divorce should not have been granted to plaintiff". He does not contend that she lacked sufficient grounds for divorce and makes no complaint in respect of the allowance of alimony awarded her by the trial court. As provided by Civil Rule 73.01(d) V.A.M.R., it is our duty to review the whole record in this nonjury case and reach our own conclusions both on the facts and the law. The judgment will not be set aside unless clearly erroneous, and we shall give due regard to the opportunity of the trial court to judge the credibility of the witnesses.

The parties were married in October, 1951. At that time plaintiff had custody of six children born to her from two previous marriages. No children were born of her union with defendant. The course of their marriage was interrupted by a number of separations for periods of time varying from several months to five years. According to plaintiff's testimony there were six separations. Defendant placed the number at twelve or thirteen. The longest period of separation was for approximately five years. Both parties testified that they were separated and living apart from each other from 1953 until 1958. Another separation occurred in 1963 some time prior to September. Plaintiff testified that she had then filed a suit for divorce in contemplation of which the parties executed a separation agreement. However, they effected reconciliation and lived together in marital relationship from September until December 25, 1963, but entered into final legal separation on that date. At the time of the trial plaintiff was 49 years old and defendant was 52.

There is evidence that plaintiff had associated with certain other men, and on occasion had "gone out" with them. This is admitted by plaintiff but she insists that her association with them was only during periods of separation from defendant and did not occur while living with him, and that she committed no act of infidelity with them. There is testimony that during the five year separation another woman lived with defendant for several years in his home at various places. Defendant so admits but claims the relationship was innocent. There is no evidence that either party was improperly associating with other persons after their reunion following the 1953–1958 separation.

To support her allegation of indignities, plaintiff testified that defendant used vile and vulgar language to her in the presence of her children; struck her on several occasions and also struck her daughter; that throughout the marriage defendant drank heavily and was habitually abusive to her and her children; that he continually accused her unjustly of being unfaithful to him, and embarrassed her in the presence of others by such accusations; and, that defendant did not financially support her, and provide her with necessary medical services. In that respect plaintiff testified that she had a condition of health impairment which arose from chronic mastoid infection. She had undergone three surgical operations for implantation of plastic ear drums in both ears and a wire arrangement in her right ear, and she still had to have surgery again on both ears. Her condition required special diet and regular medication. She testified that defendant failed and refused to buy the type of food required by her diet, and in respect to her medical bills she stated, "No, he hasn't paid one nickel or bought me a nickel's worth of medicine over the time I have been sick", and that defendant has refused to provide funds for the two operations she will have to have. Her medical expenses were paid from the earnings of her own separate seasonal employment in the manufacture of ladies dresses. On occasions prior to the 1963 separation, following plaintiff's visits to her doctor's office, defendant falsely accused her of adultery with the doctor.

Defendant testified he knew of his wife's association with other men during the 1953–1958 separation and that he had tried "to get her back", but he denied that he accused her of adultery. He did testify, however, that he had talked with plaintiff about "these men" and that she told him she "had had relations with all except F_____ C_____. * * * She told me that a number of times I would say in the last four or five years". Defendant stated that he did not know of any time plaintiff was unfaithful to him other than what she told him about "these men". Other admissions made by defendant were: that he had become intoxicated around the house, that he had been abusive to plaintiff, that he had struck plaintiff's daughter, that he had not paid for plaintiff's operations, and that he was "a pretty jealous man".

█ Although defendant's two appeal points bear separate numbers and are couched in somewhat different language, they are counterparts in substance and express the same theme: that plaintiff has not shown herself to be an *innocent* party as well as an injured party and therefore is not entitled to a decree of divorce, irrespective of his own conduct toward her. Defendant argues that plaintiff's own testimony indicates she was guilty of infidelity "by being in the company of other men in places where acts of intimacy could well have taken place". Hence, defendant says, her conduct in that respect was such as to entitle him to a divorce and thereby to operate as a bar to adjudication that she was an innocent party. The foregoing submission invokes well established and often repeated rules of law. It is fundamental that a divorce may be granted only if the party seeking it affirmatively shows that he is both an injured and innocent party; that the requirement of "innocence" means only that the applicant must show that he himself has not committed any offense which is cause for divorce; that the burden of showing such innocence is an affirmative one resting upon the party seeking divorce; and that where both parties have grounds for divorce, neither party is entitled to the relief. R_____ v. M_____, Mo.App., 383 S.W.2d 894. The degree of innocence a party must have to be entitled to a divorce does not mean that his or her conduct toward the spouse on all occasions must be letter perfect and above all reproach. The generally accepted rule is that the conduct of one party will not prevent him from being adjudged an innocent party unless it be such as to entitle the other party, prima facie, to a divorce.

Harwell v. Harwell, Mo.App., 355 S.W.2d 137.

■ Defendant did not plead that plaintiff was guilty of adultery in her association with other men, and, in testifying, vehemently denied that he had so accused her. Even in his brief defendant refrains from using the word "adultery" in a specifically accusatory sense. The tenor of his complaint is that plaintiff in her association with other men had *opportunity* for "acts of intimacy", and that her conduct in "keeping company" with them was a species of indignity causing him to undergo mental distress generated by *suspicion* that she may have committed adultery. We find merit in this contention.

In Herriford v. Herriford, 169 Mo.App., 641, 155 S.W. 855, the court said, "But the divorce is not sought on the ground of adultery, but on the ground of indignities. Even if no adultery is committed by fleshly act, still a wife has no right to so conduct herself as to implant a torturing suspicion of infidelity in the husband's breast and lead him and the world to think adultery has been committed. Such conduct is of itself an indignity". And in Straley v. Straley, 221 Mo.App., 1136, 298 S.W. 110, where a wife was going with and receiving visits from other men without the husband's knowledge, this court said: "As before stated, while there is no testimony as to any immoral relation had between plaintiff and Rau, we do not think that plaintiff has conducted herself as an innocent party within the meaning of the law and is not entitled to a divorce". Also see LeBeau v. LeBeau, Mo.App., 366 S.W.2d 515, and Ferguson v. Ferguson, Mo.App., 279 S.W. 189. Without specifically finding that plaintiff committed adultery, we conclude that her admitted relationships with other men were breaches of marital duty and constituted indignities which, unless remitted by subsequent conduct of the parties, would have afforded defendant grounds for divorce. Consequently, so long as defendant would have been entitled to a divorce for those causes (aside from considerations of his own innocence) plaintiff could not have been considered to be an innocent party.

■ However, it is urged by plaintiff that defendant has condoned any misconduct of which she has been guilty and that she has thereby been restored to the status of an innocent party. This contention is based upon the claimed legal effect of the reconciliation made by the parties in 1958 terminating their long separation which began in 1953, and their subsequent living together as husband and wife in conjugal relationship for the ensuing five years. The term "condonation" as used in the law of divorce means a forgiveness and pardon by one spouse of the other after full knowledge of past wrong or fault, on condition, express or implied, that the same will not be repeated. Cohabitation, with full knowledge of the offense, is strong evidence of condonation, increasing in probative force with the length of time continued. And in most cases when the cohabitation is long continued it will be taken as conclusive evidence, especially where the offense involved is conjugal infidelity. Weber v. Weber, 195 Mo.App. 126, 189 S.W. 577. Also see Stone v. Stone, Mo.App., 378 S.W.2d 824. Condonation is not an absolute forgiveness of marital misconduct, but is conditional. It is said to be an excuse for past offenses, upon the implied condition that the marriage obligations shall thereafter be regarded. A breach of that condition at once revives the original grievance as a cause for divorce. An offense which has been condoned may be revived, not only by a repetition or renewal of the same or similar offense, but also by the commission of other marital offenses subsequent to the condonation. O'Neil v. O'Neil, Mo.App., 264 S.W. 61.

■ The facts before us clearly establish that as a result of the 1958 reconciliation each of the parties condoned the marital offenses of the other party. The

termination of their long separation by the resumption of the marriage relationship and cohabitation together for five years thereafter is very convincing, if not presumptive, evidence that both parties joined in extending mutual pardon and forgiveness, upon the implied condition that neither party would thereafter commit any offense against the other. Thereby plaintiff conditionally forgave defendant for his indignities and defendant conditionally forgave plaintiff for her indiscretions, all of which were known to him, as the evidence clearly shows. Plaintiff faithfully complied with the conditions inherent in condonation extended to her by defendant. He makes no charge against her and there is no evidence indicating that she had any association whatsoever with any other man after the reconciliation above noted, nor is there evidence of any other breach of marital duty on her part. Having observed the requirements of her "pardon" she was entitled to its benefits, namely, the extinguishment of defendant's ground for divorce and the restoration of her status as an innocent party. As to the defendant, the evidence clearly shows failure on his part to fulfill the conditions upon which he was condoned by plaintiff, in that he thereafter continued to inflict indignities upon her by physical and verbal abuse and refused to provide her medicines, medical treatment, and necessary surgical services, all as he had previously done and as hereinabove set out, and wrongfully accused her of adultery with her own doctor. This breach of conditions by defendant revived all original grievances he had inflicted upon plaintiff as causes of complaint for divorce, Garton v. Garton, Mo.App., 246 S.W.2d 832. Such were the relative positions of the parties with respect to fault and innocence when they terminated their 1958–1963 reunion by another separation some time prior to September of the last named year. To summarize: plaintiff was then both an innocent and injured party. Defendant was neither innocent nor injured.

We have come to the final chapter of this turbulent marriage. As earlier mentioned, the parties effected one more reunion. In September of 1963 plaintiff, apparently having abandoned her plans to obtain a divorce, returned to the home and marriage bed of defendant. Thereafter the parties lived together and cohabited until the following Christmas day. Their final separation as man and wife, in a legal sense, occurred on that date. The only significance of this last reconciliation is that it once more brought into operation the law of condonation to conditionally forgive defendant his marital wrongs against plaintiff. Plaintiff, who had faithfully observed the conditions of her previous condonation, had been purged of her transgressions and was in no further need of defendant's condonation to achieve the status of an innocent party. The pattern of defendant's behavior toward plaintiff during this final period of reconciliation was essentially as it had been during the years from 1958 to 1963, in that he renewed his infliction of indignities upon plaintiff as he had previously done and as hereinabove set out. As a consequence, all of his previous wrongs against plaintiff again revived as valid grounds entitling her to a decree of divorce.

 As anticlimax, plaintiff returned to defendant's home for one night only in March, 1964. The visit resulted from plaintiff's need to obtain her income tax form from defendant. It is not clear from the record that plaintiff obtained her tax form but it does appear that she stayed all night with defendant and that they were "intimate". We believe the incident has no legal significance and has had no effect on the marital rights or status of the parties. The circumstances of the episode indicate that it was an unintended adventure resulting from propinquity of person and the opportunity it afforded. The evidence does not permit an inference that the "intimacy" of the parties was the result of, or was accompanied by, any inten-

tion or agreement on their part to resume the marriage. See Weber v. Weber, supra.

The judgment is affirmed.

HOWARD, P. J., BLAIR, J., and FRANK D. CONNETT, Jr., Special Judge, concur.