419 S.W.2d 461 (1967)
J., Plaintiff-Appellant,
v.
K., Defendant-Respondent.
No. 8587.
Springfield Court of Appeals, Missouri.
September 21, 1967.
*463 Raymond S. Roberts, Roberts & Roberts, Farmington, for plaintiff-appellant.
David L. Colson, Smith & Colson, Farmington, for defendant-respondent.
HOGAN, Judge.
This is a divorce case. The wife, to whom we shall refer simply as J., filed the action on grounds of general indignities. K., the defendant husband, responded by filing a general denial without any request for affirmative relief. Finding that the plaintiff was not an innocent and injured party, the trial court refused to enter a decree of divorce, and the plaintiff has appealed.
The plaintiff, 26 years of age at trial time, and the defendant, whose age is not shown, were married October 4, 1958. They are the parents of two small daughters, one five years old and the other about three. At the time the parties were married, the defendant was "just going into the Army." He is now an officer serving in the Army, and much of their married life has been spent at various domestic and overseas Army posts.
The plaintiff testified to a number of episodes which occurred at various times, the net effect of her evidence being that the defendant had abused and neglected her, had unjustly criticized her housekeeping, had associated improperly with other women, and on occasion had cursed her and had called her a "bitch" and a "prostitute." There is *464 no need to repeat all this evidence in detail, for it is in effect conceded that at the time the events we are about to relate happened the defendant had given the plaintiff cause for divorce if she was an "innocent" party.
Following a period of duty at Ft. Benning, Georgia, apparently in 1964, the defendant was given an "undesirable assignment" in Korea. The plaintiff wanted to remain at Columbus, Georgia, where the parties had been living, but the defendant insisted that she return to Missouri where her parents lived. By January or February in 1965 the plaintiff "* * * was tired * * * had worked hard, and * * * thought a vacation would be fine," and consequently she left Missouri for Colorado Springs, Colorado. Whether or not by prearrangement, she contacted one M., a man whom she had known before her marriage and whom she described as being "trustworthy" and "fine," and remained at M.'s motel for "six or seven days." At the end of this period, the plaintiff returned to Missouri, having advised M. that she would return and that he should obtain more commodious quarters because she was going to bring her children. Plaintiff then remained in Missouri for about a month, returned to Colorado Springs, and moved into M.'s apartment with her children. On this second trip, the plaintiff remained in Colorado "approximately a month." The plaintiff vigorously maintained that her relationship with M. was conventional and proper, and insisted that she stayed with M. only as his "guest." After the plaintiff had been in Colorado Springs for about a month on this second visit, M. was transferred temporarily to Amarillo, Texas, and the plaintiff followed him there with her children. After she had been in Amarillo for two or three days, the defendant returned unexpectedly from Korea. At this juncture, the plaintiff was arrested on her mother's complaint, and the defendant traveled to Amarillo to bring the plaintiff and his children back to Missouri.
Plaintiff then advised the defendant that she no longer wanted to live with him, and wanted a divorce. She did return to Missouri, having fully informed her husband of her affair with M., but at once consulted an attorney about a divorce. The attorney she consulted advised her to attempt a reconciliation with the defendant, and at plaintiff's request the attorney obtained the name of a psychiatrist in St. Louis with whom both the plaintiff and defendant consulted on several occasions in an attempt to solve their marital problems. Upon the advice of her attorney and her physician, and acting upon the defendant's profession that he would not repeat the indignities which he had previously committed, the parties became reconciled and resumed cohabitation at Ft. `Leonard Wood where the defendant was stationed.
The attempted reconciliation was unsuccessful. The plaintiff had told her husband that she would not stay with M. again and would not contact or talk to him again, but as appears in the record she did remain in contact with M. by telephone, though she assured the trial court that M. called her without encouragement on her part, and that he called only because "he was interested in my welfare, I guess." In any event, and whatever their motivation, it was brought out that plaintiff and M. have conversed by long distance telephone some 20 times after she resumed cohabitation with the defendant, after she represented to the defendant that she would have no further contact with M., and it appears that plaintiff neither discouraged M. nor advised the defendant that he had called. The defendant also resumed his offensive conduct and the parties finally separated on November 18, 1965. Shortly thereafter, this action was begun. The question before us on this state of fact is whether the plaintiff's misconduct has been condoned, or whether, in the circumstances, it still constitutes a recriminatory bar to her action for divorce.
Substantially all the testimony in this case came from the plaintiff herself, though parts of a pre-trial deposition given by the defendant were introduced; but considered as a whole and taken as true, the *465 plaintiff's evidence tends to establish that the defendant had, over a period of years, degraded and insulted the plaintiff in a number of ways. Any continuous course of conduct by one spouse toward the other which renders the injured spouse's condition intolerable through acts of such character as to be subversive of the family relation may constitute "indignities" within the meaning of Section 452.010, RSMo (1959), V.A.M.S., depending on the circumstances, Hooper v. Hooper, 19 Mo. 355, 356-357 [1] [2]; Moore v. Moore, Mo.App., 337 S.W.2d 781, 786-787 [2-8]; Thomas v. Thomas, Mo.App., 288 S.W.2d 689, 696 [4-6], certiorari denied 352 U.S. 873, 77 S.Ct. 98, 1 L.Ed. 2d 77, and we assume plaintiff's grounds for divorce were sufficient.
It is not enough, however, for a plaintiff seeking a divorce in this state to show that he is "injured," i.e., that he has grounds for divorce. Through an extension of the maxim that he who seeks equity must come into court with "clean hands," our courts have held since an early day that a divorce may be granted only if the party seeking it shows that he is both an injured and an "innocent" party. "Innocence," in this context, does not mean freedom from all fault, but it is required that the party seeking a divorce show affirmatively that he himself has committed no offense which is a ground for divorce. Franklin v. Franklin, 365 Mo. 442, 446, 283 S.W.2d 483, 485-486 [6-8]; Simon v. Simon, Mo., 248 S.W. 2d 560, 562, 563 [1] [2, 3]; Gregg v. Gregg, Mo.App., 416 S.W.2d 672, 675 [5] [6].
We consider it most evident from the facts that unless the plaintiff's association and relationship with M. has been condoned by the defendant, she has failed to establish the lack of recriminatory faultthe "innocence"which was an essential element of her case. Judging only by its outward aspect, the plaintiff's relationship with M. was improper, if not immoral, and it is not controlling on the merits that no actual physical, carnal adultery was shown. Plaintiff's association with M. was patently such as to afford her the opportunity for adultery and to generate a reasonable belief in the mind of her husband and others that adultery had been committed. Her conduct in associating with M. as she did constituted a species of indignity which gave the defendant cause for divorce, in our view, even though there was no specific proof of any act of sexual intercourse between M. and the plaintiff. Gregg v. Gregg, supra, 416 S.W.2d at 676 [10]; LeBeau v. LeBeau, Mo.App., 366 S.W.2d 515, 518-519 [4]; Herriford v. Herriford, 169 Mo.App. 641, 651-652, 155 S.W. 855, 858 [5].
Of course, the parties did attempt to effect a reconciliation and they did resume cohabitation after the defendant became fully cognizant of the plaintiff's misconduct. As the plaintiff maintains, the law regards cohabitation with knowledge of the offense committed as strong evidence that past conjugal offenses, including adultery, have been condoned and forgiven, Reeves v. Reeves, Mo.App., 399 S.W.2d 641, 646 [6, 7], and condoned infidelity, unrevived, is not a recriminatory offense and does not prevent an otherwise "injured" spouse from being "innocent" as well. Reeves v. Reeves, supra, 399 S.W.2d at 645-646; Cumming v. Cumming, 135 Mass. 386, 389-391; 24 Am. Jur.2d Divorce and Separation, § 232, pp. 389-390.
Condonation is only a conditional remission, however, and an offense which has been condoned may be revived not only by a repetition or renewal of the same offense, but also by the commission of other marital offenses subsequent to the condonation. Gregg v. Gregg, supra, 416 S.W.2d at 676 [16]; Tootle v. Tootle, Mo.App., 329 S.W.2d 218, 221 [3]. It is not necessary, in this jurisdiction, that the new or subsequent misconduct be of the same kind or be sufficient of itself to warrant a separation or divorce in order to revive the condoned offense. Tootle v. Tootle, supra, 329 S.W.2d at 221 [3]; Ratcliff v. Ratcliff, 221 Mo. App. 944, 949, 288 S.W. 794, 796 [3]. Moreover, condonation involves the idea of *466 voluntary pardon and forgiveness on the part of the offended spouse induced by a good faith expression of repentance and promise of future good conduct, Reeves v. Reeves, supra, 399 S.W.2d at 646 [6]; Weber v. Weber, 195 Mo.App. 126, 129, 189 S. W. 577, 578 [1]; 24 Am.Jur.2d Divorce and Separation, § 219, p. 373, and if the injured party's remission of the offense and resumption of cohabitation is induced by deception or in bad faith, then nothing is actually condoned. Anno., 32 A.L.R.2d 107, § 16, pp. 152-153 (1953); 24 Am.Jur.2d Divorce and Separation, § 219, p. 373; 27A C.J.S. Divorce § 60, p. 203. In this case, the conditional or tentative nature of the parties' reconciliation may be deduced from the plaintiff's own testimonythe parties would "try hard all over again." And while the plaintiff did not specifically use the word "promise" in her testimony, she did answer affirmatively when she was asked if she "* * * discuss[ed] with [her] husband that you would not be a guest of M.'s any more if the two of you could get back together and work this thing out," and plaintiff again said "yes" when she was asked if she told defendant "* * * that you would not contact or talk to M. again." While the evidence may be subject to other interpretation, we think there was more than an implied promise here to forego all future association with M. as a condition to defendant's condonation, even though the plaintiff did not specifically say she "promised" to do so. Nevertheless, after the parties resumed cohabitation, the plaintiff continued to communicate with M. by telephone. To be sure, the plaintiff testified that M. called only to inquire about the state of her health, but the trial court was not obliged to credit that part of her evidence, and for all that appears, plaintiff did nothing to discourage M. from continuing his calls, and certainly did not advise the defendant he had done so. Though it is our duty to review the whole record in this case and reach our own conclusion on both the facts and the law, Gregg v. Gregg, supra, 416 S.W.2d at 674 [2], the judgment entered is not to be set aside unless it is clearly erroneous, and due regard must be given to the opportunity of the trial court to judge the credibility of the witnesses. Rule 73.01(d), V.A.M.R. We are particularly inclined to apply this rule of deference in a case of this kind, where a proper determination of the issues depends largely upon the credibility of one of the parties to the action. Reeves v. Reeves, supra, 399 S.W.2d at 648-649 [13]. We think the trial court might reasonably have concluded that the plaintiff's continued surreptions communication with M. after she and the defendant resumed cohabitation was sufficient to revive the offenses which had been condoned, Longinotti v. Longinotti, 169 Ark. 1001, 277 S.W. 41, 42-43; Warner v. Warner, 31 N. J.Eq. 225, 227-228; Anno., 16 A.L.R.2d 585, § 10, pp. 600-602 (1951), or, with equal justification, that defendant's condonation was induced by representations made simply to avoid the consequences of detected infidelity. In either view of the matter, the judgment is correct, and is therefore affirmed.
STONE, P. J., and TITUS, J., concur.