James E. KEEFE, Appellant,

v.

Eleanore KEEFE, Respondent.

No. 53398.

Supreme Court of Missouri,
Division No. 2.

Dec. 9, 1968.

Rehearing Denied Dec. 31, 1968.

Samuel Richeson, Roland A. Wegmann, Dearing, Richeson, Weier, Roberts & Wegmann, Hillsboro, for plaintiff-appellant.

Thurman, Nixon, Smith & Howald, Jeremiah Nixon and James E. Bowles, Hillsboro, for defendant (respondent).

DONNELLY, Judge.

In this suit, plaintiff James E. Keefe sought and was granted a divorce from defendant Eleanore Keefe. Defendant Eleanore Keefe counterclaimed to establish a resulting trust in certain real estate, sought an accounting as to certain other real estate, and sought partition. Plaintiff appeals from that part of the decree of the trial court which granted defendant equitable relief and attorney's fee.

There are several tracts of real estate involved. Tracts I through IX were in controversy in the trial court. Tracts IV, V, VI, VIII and IX are in controversy on appeal.

Plaintiff and defendant were married July 5, 1949. During the marriage, land was purchased, buildings were built on the land, and the land and improvements were then sold. Plaintiff, a carpenter, built the houses with the help of one man and managed the business. Defendant helped write contracts and agreements, helped write checks, made some business calls, ordered material on occasion, and received many payments from purchasers. They lived together as husband and wife until October 22, 1966, when they separated. The disputes involved in this case followed.

Plaintiff first contends the trial court erred in impressing Tracts V, VI and VIII with a resulting trust in favor of defendant to the extent of an undivided one-half interest. Plaintiff also contends that Tract IX should be impressed with a resulting trust in favor of plaintiff.

Plaintiff admits that prior to the purchase of Tract V, plaintiff and defendant owned certain real property as tenants by entireties, that they sold said entirety property, and that proceeds from said sale were used to purchase Tract V. The legal title to this tract is now in James E. Keefe.

Plaintiff admits that prior to the purcase of Tract VI, plaintiff and defendant owned a checking account, which was held as tenants by entireties, and that funds from said entirety account were used to the extent of $800 to purchase Tract VI. The legal title to this tract is now in James E. Keefe.

Plaintiff admits that prior to the purchase of Tract VIII, plaintiff and defendant owned certain real property as tenants by entireties, and that they exchanged said entirety property for Tract VIII. The legal title to this tract is now in James E. Keefe.

Plaintiff admits that legal title to Tract IX is now in James E. Keefe and Eleanore Keefe, his wife, as tenants by entireties.

The law is well settled that " * * if the husband takes the proceeds of property that belonged to him and his wife in entirety and invests the same in other land taking the title to himself alone, a court of equity, at the suit of the wife, will raise a resulting trust in her favor, and decree that the husband holds the title in trust for his wife and himself as an estate in entirety." Frost v. Frost, 200 Mo. 474, 484, 98 S.W. 527, 529.

The law is also well settled that if the husband pays the consideration for property and has the conveyance made to himself and his wife, as tenants by entireties, " * * * it will be presumed that he intended it as a settlement upon his wife. But this is a rebuttable presump-

tion, and, if all the facts and circumstances show that no such settlement was intended, then the presumption of a settlement in favor of the wife is rebutted, and she will hold the property in trust for her husband, if he has paid for the same, just as if she were a third party." Thierry v. Thierry, 298 Mo. 25, 45, 249 S.W. 946, 952.

We reach the following preliminary conclusions:

(1) As to Tracts V, VI and VIII: It is conceded that entirety property was used as consideration for the conveyances made to James E. Keefe. If plaintiff, when the entirety estates were created, intended gifts to his wife to the extent of the beneficial interests created, the trial court did not err in establishing a resulting trust in favor of defendant. Frost v. Frost, supra; Thierry v. Thierry, supra.

(2) As to Tract IX: It is conceded that legal title is in plaintiff and defendant as tenants by entireties. If plaintiff, when the entirety estate was created, intended a gift to defendant to the extent of the beneficial interest created, a resulting trust should not be established in favor of plaintiff. Thierry v. Thierry, supra.

The essential question, therefore, as to Tracts V, VI, VIII and IX, is whether, under the evidence, gifts were intended by plaintiff to defendant when the entirety estates were created. It will be presumed that he intended "a settlement upon his wife. But this is a rebuttable presumption, and, if all the facts and circumstances show that no such settlement was intended, then the presumption of a settlement in favor of the wife is rebutted, * * *." Thierry v. Thierry, supra.

There is little direct evidence on the question of plaintiff's intent in this regard. Defendant testified as follows:
"Q. At the time the property was purchased, was it your understanding at that time, that the property was purchased in joint names? A. Yes.
 *     *     *     *     *     *

"Q. When did you first find that the property wasn't in joint names? A. About a year before our separation.

"Q. And under what circumstances did you find that out? A. Well, we have a metal box that we kept a lot of our papers in, deeds and things, and I was hunting for a deed for him one day, or some paper that he needed, and I ran across this deed, and I guess out of curiosity, I looked at it to see if my name was on it, and when I confronted him with it, he said, 'Well it was an oversight', he didn't know it either, and that it really didn't make any difference because all the property we owned was jointly owned.

"Q. And you discovered this over 10 years after the purchase? A. Yes."

Plaintiff testified as follows:

"Q. Mr. Keefe, during some of the time that deposits were being made of your business funds in the two-name account, were there periods when you did not have any other account in operation at that time? A. Yes, sir.

"Q. And what was your intention in establishing this two-name account? A. So my wife could have money, periodically, to run the house, buy groceries and clothes.

"Q. Did you have any intention of making any gift to her of a ownership interest in the account? A. Certainly not."

In State ex rel. Taylor v. Anderson et al., 363 Mo. 884, 893, 254 S.W.2d 609, at 615, appears a statement particularly appropriate here: "This being a suit in equity, we review the case de novo, weigh the evidence, and determine on the whole record what relief, if any, should be granted. Where, as here, however, there exists an irreconcilable conflict in the evidence on the essential fact issue involved, depending for determination on the credibility of witnesses, a situation prevails wherein the application of the rule of deference to the findings and conclusions of the trial chancellor is especially appropriate and necessary. [Citing cases.] The trial chancellor's opportu-

nity to observe the witnesses and to hear them testify affords him a basis for determining the credibility of testimony which we do not have. A review of the entire record in this case convinces us we should defer to the trial court's conclusion that the testimony of * * * [Eleanore Keefe] was true."

■ We recognize that defendant contributed much less than did plaintiff to the business, and that a "business" pattern, existing over a period of many years, runs through the entire case. However, the trial court, on the basis of the evidence adduced, believed that plaintiff intended to share the fruits of his labor with his wife. We agree. We are of the opinion that plaintiff failed to sustain his burden to prove that at the time he caused the properties to be placed in both names, he did not intend to make a gift to her to the extent of the beneficial interests created. We hold that:

(1) The trial court did not err in impressing Tract V with a resulting trust in favor of defendant.

(2) The trial court did not err in impressing Tract VI with a resulting trust in favor of defendant. However, a resulting trust may be impressed only to the extent of the interest shown. There is no substantial evidence to support a finding that more than $800 was used from the entirety checking account to purchase Tract VI. To the extent that $800 represents the purchase price of Tract VI, plaintiff "was in duty bound to have taken the title in the name of himself and wife as an estate in entirety, and to that extent he will be decreed now to hold the title in trust." Frost v. Frost, supra, 200 Mo. 474, 485, 98 S.W. 527, 529.

(3) The trial court did not err in impressing Tract VIII with a resulting trust in favor of defendant.

(4) We should not impress Tract IX with a resulting trust in favor of plaintiff.

■ Plaintiff next contends that the trial court erred by entering allegedly con-

flicting findings in its decree. In Count III of the decree, the trial court impressed Tracts V, VI and VIII with a resulting trust. In Count IV of the decree, the trial court declared plaintiff and defendant owners of these tracts as tenants in common, each as to an individual one-half interest, and ordered partition. We fail to see how plaintiff was thereby prejudiced. The point is without merit.

Plaintiff next contends the trial court erred in awarding defendant a judgment in the amount of $3,836.25. This dispute involves Tract IV. The legal title to Tract IV is in James E. Keefe and Eleanore Keefe, his wife. A deed of trust was executed by the parties to a loan company which loaned in return the sum of $13,337.-50. Defendant seeks an accounting. The trial court found that plaintiff was entitled to a credit for $5,665 paid by him to the American Bank of DeSoto, subtracted said credit from the amount loaned, and divided the difference in half, awarding defendant $3,836.25. Plaintiff contends the trial court failed to allow all of the credits shown by the evidence. Plaintiff's uncontradicted testimony in this regard is as follows:

"Q. What did you do with that $13,337.-00 Check? A. Do you expect me to tell you all those checks that I wrote, which you made me pull out there?

"Q. What did you do with the check, did you deposit it somewhere? A. Yes, sir.

"Q. Where? A. In the American Bank.

"Q. In what account? A. Special Account.

"Q. What did you use the proceeds of that $13,337.00 check for? A. You have that.

"Q. To pay expenses of the business, business expenses, is that what you used it for? A. Partly.

"Q. And what else? A. To pay back a loan from the bank.

"Q. And that loan, the proceeds of that loan was in whose name, who owned that

loan, who had signed for that loan? A. Eleanore and I.

"Q. Both of you? A. Yes, (Indicating)

"Q. What were the proceeds of that loan used on? A. To pay Income Tax.

"Q. And what else, it was used for the business, wasn't it? A. No, sir.

"Q. None of it? A. No, sir.

"Q. The proceeds of that loan at the American Bank was how much? A. Five thousand five hundred dollars.

"Q. Your testimony is, that that $5500.00 was all used to pay Income Tax? A. Almost all of it, and then it was amended, not all of it but close to it.

    *    *    *    *    *    *

"Q. Now, what else did you use the proceeds of this loan for? A. I can't set here and tell you, I told you on those interrogatories, had a list of checks that long, (Indicating).

"Q. You paid Hopson Lumber Company, $4251.96, what was that for? A. That was for the materials on that house.

"Q. Materials on which house?

"A. The one we used for security of the loan.

"Q. When did you build that house? A. In '65.

"Q. When in '65, do you know? A. I didn't build it no certain day.

"Q. And then to Clinton Carpet and Tile, $278.00, what was that for? A. For the carpet that went into that house."

■ We believe plaintiff is entitled to credits for $5500, $4251.96, and $278. Judgment should be entered for defendant in the amount of $1653.77.

■ Plaintiff next contends that the trial court's award to defendant of $700 as attorney's fee is excessive. " * · * * The determination of an allowance to the wife for a reasonable attorneys' fee is, and of necessity must be, left largely to the discretion of the trial court. Wonneman v. Wonneman, Mo.App., 305 S.W.2d 71, Cadenhead v. Cadenhead, Mo.App., 265 S.W.2d 426, for the trial court has the parties before it, passes upon such preliminaries as may occur prior to trial, presides at the trial if one is held, and has a much better grasp of all of the ramifications of a case than an appellate court can gain by reading a record. Hence, it is also the rule that an appellate court will not interfere with the exercise by the trial court of its discretion unless it has been manifestly abused. * * *" Gross v. Gross, Mo.App., 319 S.W.2d 880, 888. We are unable to say on this record that the trial court abused its discretion in allowing $700 as attorney's fee.

■ Defendant asks that we advise the trial court as to the amount we think should be allowed as attorney's fee for services on appeal. We decline to do so. The question can best be determined by the trial court in this case.

■ Plaintiff finally contends that because defendant stands convicted in this case of adulterous conduct, she comes into a court of equity with unclean hands, and this Court "should not be receptive to her claims." This contention is answered by what this Court said in Kinzey v. Kinzey, 115 Mo. 496, 502–503, 22 S.W. 497, 498, 20 L.R.A. 222: " * * * It may be true that at the time * * * [these settlements were made, plaintiff] may have thought that as his wife always had been, so she would thereafter always continue to be, faithful to her marital vows, and that, if he had known that she would thereafter prove false to them, he would not have made the settlement[s] upon her * * * that he did make. But that he was mistaken in this reasonable expectation, as subsequent events proved, affords no pretext for the intervention of a court of equity to deprive her of property which he had, upon good consideration, theretofore vol-

untarily settled upon her; * * *. A court of quity can and will interfere to restore to a party injured property which has been obtained from him by imposition or deceit. But in this case no property was obtained from the plaintiff by imposition or deceit. He was simply mistaken in the moral worth and virtue of one of the objects of his bounty. From the consequences of such a mistake of judgment a court of equity cannot relieve him. * *."

The case is remanded with directions to modify the judgment as herein directed, and the judgment as so modified is affirmed.

All of the Judges concur.