Lois M. BURGER, Respondent,

v.

David W. BURGER, III, Appellant.

No. 25713.

Missouri Court of Appeals,
Kansas City District.

June 5, 1972.

Allan J. Fanning, Kansas City, for appellant.

Alex Peebles of Quinn, Peebles & Hickman, Kansas City, for respondent.

PER CURIAM.

In this divorce action the points are (I) that the court erred in granting respondent a divorce because there was insufficient evidence of appellant's continuous course of conduct to amount to indignities under the statute (Section 452.010); (V) error was committed in refusing to grant appellant a divorce on the ground of indignities; (II) there was insufficient evidence to justify awarding respondent $4,000.00 alimony in gross; and that (III) a stipulation in the decree that such alimony be used to pay outstanding debts of the parties was in error; and (IV) that the $500.00 attorney fee awarded respondent was in error because of insufficient evidence of the parties' ability to pay same, or that the amount was reasonable.

The parties were married in Harrisonville, Missouri, in July, 1956, and separated May 18, 1970. Lois testified that she treated David with kindness and affection and performed all the duties of a wife during the time of the marriage. One child, age 10 at time of trial, was born of the marriage, of whom Lois had custody. No child support was paid Lois since the separation. As to why she wanted a divorce, Lois testified that she got tired of being threatened and beaten. The night before she left David threatened to kill her if she did not do the things he wanted done, and one day (June, 1963) when she was working at Hallmark Cards, he drove up "and started to beat me and hit me, he

jumped out of the car and grabbed me and I struggled between two cars and somebody came and drug him off of me and took him to jail, and he—I had him put in jail but I didn't press charges." As a result of the bruises on her body Lois entered St. Luke's Hospital and remained there four days. On another occasion she was in the Harrisonville Hospital because of nervousness—she went to work and fainted. At Mondell Ford David threatened on the most recent time, saying, "If I get ahold of you I'll kill you." She filed for a divorce in June, 1963, which ended in her going back to David, but it did not work out. On one occasion when she was living at her father's house (the time was apparently 1963), David struck her father, tore down the door and dragged Lois by the feet and the arm.

The accumulated bills at the time of trial were: Beneficial Finance, $900.00; Montgomery's $442.00; Spigall's $600.00; Citizens Bank $320.00; Bankamericard, $688.00; Aldens, $569.00; Wilco, $932.69; and Interstate Securities, $696.00, a total of $5,147.69. Lois had a 1970 Ford XL and David had a 1968 El Camino. She was making payments on the (her?) car, and he was making payments on the home in Harrisonville. David was working at Bendix with pay checks of $154.00 per week, and had a part time job with a farmer, Dean Nebbs, making an average of about $90.00 per week; and he also cut wood and sold it for $35.00 a cord.

Lois asked for a divorce and custody of the child, with reasonable visitation privileges to David, which she had never denied him. She also asked for "Alimony in gross to cover the bills you have accumulated during the marriage." She asked for $500.00 attorney fees to cover at least the four times she (and counsel) had been in court.

On cross-examination Lois testified that her take-home pay was $86.80 a week. She and David were jointly liable for all the bills. The total debts she listed did not include what was owed on the cars. The Interstate Securities debt was for a washer and dryer, which were in storage, and was incurred after separation. Lois also bought a refrigerator and stove when she moved out—both were unused and were also in storage.

Lois paid $83.80 per month on her car; $30.00 to Macy's; to her folks $80.00 per month, and to her mother $20.00 a month for keeping the child; and she bought some of the groceries. On re-direct examination, Lois testified that there was no chance of reconciliation.

David denied that he threatened Lois, but called her three different times to ask if she would let him see his son, and she said, "no." His base pay averaged $110.00 to $112.00 for a 40 hour work week, with no overtime pay. His earnings with Nebbs were $40.00 per week. He was unable to cut wood the last year, but the previous year, for the three month fireplace wood season, he earned $50.00 to $70.00 per week. He could not keep up with the bills because Lois would buy anything she liked and he did not deny her anything they could afford. David and Lois would argue over the financial situation, "but she would not listen." She charged to his accounts about $1,000.00 since the separation for wedding rings (for her parents), a gun (for David), and a tachymeter (for the son), and a refrigerator and stove. David denied that since 1963 he had ever laid a hand on Lois or threatened to kill her. At the time of trial David was paying on all bills except Lois' car payment, Wilco and Interstate Securities, and was behind in a couple of bills.

Lois' counsel stipulated to the court that if a lump sum judgment for alimony was granted, so long as David paid the accumulation of family bills, there would be no execution of his salary, and at the end of the time the judgment would be satisfied on the record "so that there would be no judgment if these bills are paid." David told the court that he thought Lois should pay the bills charged to him since she left.

He was "running around $60.00 more in bills at the present time per month than my gross income is."

The trial court, in granting a decree of divorce to Lois, made this entry: "Alimony in gross to plaintiff in sum of $4,-000.00 payable to plaintiff if defendant fails to pay outstanding bills now due and owing."

The evidence of threats upon Lois was sufficient to amount to indignities and to sustain her decree of divorce. See Lamberson v. Lamberson, Mo.App., 230 S.W.2d 497, 500[4]. The evidence of threats does not constitute a single incident of indignity under this record, and within the cases cited by David such as Watson v. Watson, Mo. App., 291 S.W.2d 198, 200. Rather, the evidence shows that David threatened Lois the night before the last separation, May 18, 1970. He then telephoned threats to kill her at Mondell Ford. While the 1963 reconciliation does amount to a condonation of previous indignities, the same is conditional, and a breach of the condition will revive the grievance. Dunlap v. Dunlap, Mo.App., 255 S.W.2d 441, 442[3, 4]; J. v. K., Mo.App., 419 S.W.2d 461, 465 [8–17], and cases cited. The last events show the culmination of a course of conduct having its inception prior to the 1963 separation and reconciliation so as to amount to indignities as to make Lois' condition in life intolerable. The conflict in the testimony was for the trial court to resolve. J. v. K., supra. David testified to no events as would entitle him to a divorce, and thus there was no error in refusing his prayer for a divorce.

The trial court's entry awarding alimony in gross of $4,000.00 "if defendant fails to pay outstanding bills now due and owing" was a conditional decree. "A final conditional decree, one that does not operate in praesenti, but is to become operative on the occurrence of some condition, is void." 30A C.J.S. Equity Section 584, p. 651. See also Thompson v. Hodge, Mo. App., 348 S.W.2d 11, 13, where the judgment in part recited " * * * the court orders that the defendants cease operation of the mill as of this date, and *upon their failure to do so the judgment of $1,000.00 becomes final.*" At 348 S.W.2d 14[7, 8], the court said, "In this case, however, the question of damages which had been suffered was a pleaded issue in the case. That issue was not determined but left dependent and contingent upon a future event or course of action which might or might not occur. The award of damages was not *in praesenti* but was to come into existence only upon certain contingencies which the court thereafter would necessarily have to determine to have occurred, and this, unless admitted, by the hearing of evidence on the subject. We must therefore hold that the May 5 judgment was not final in the sense of being immune from modification." See also Stone v. Boston, Mo.App., 218 S.W.2d 783.

Under the circumstances, if the award of $4,000.00 alimony were to stand, unconditional in nature, as it must be, David would be subjected to payment of that judgment in addition to his primary liability for the necessary debts contracted during the marriage, the thing the parties and the trial court were attempting to avoid. Through her counsel, Lois wanted only that David pay the debts. This may be accomplished by the trial court's reconsideration of the alimony and, if indicated, to award a sum on a month-to-month basis which may be modified from time to time as the evidence may show and viewed in the light of David's actual payment of the debts.

Custody, visitation rights, and child support in the amount of $25.00 per week were provided in the decree, and no issue is made as to these matters on this appeal.

The judgment as to attorney's fees allowed to Lois does not seem to be unreasonable in view of four court appearances on her behalf, and again considering the relative incomes of the parties. There was no manifest abuse of discretion by

the trial court, and its action will not be disturbed as to this award. Keefe v. Keefe, Mo., 435 S.W.2d 313, 317[6, 7] and cases cited.

The judgments as to divorce and the award of attorney fees are affirmed. The judgment as to alimony is reversed and that aspect of the decree is remanded for further proceedings and entry of a new judgment for alimony as the trial court may deem proper.