Eugene SOUZA, Respondent,

v.

Vera SOUZA, Appellant.

No. 25725.

Missouri Court of Appeals,
Kansas City District.

June 5, 1972.

Lynn M. Ewing, Jr., Ewing, Ewing, Carter, Wight, Woodfill & Middleton, Nevada, for appellant.

Fred M. Teel, Teel & Teel, Nevada, for respondent.

PER CURIAM:

This is a divorce case in which the husband is the plaintiff. The defendant wife pleaded acts of misconduct on the part of the plaintiff, but she used those allegations only defensively and not as the basis for seeking a divorce at her own instance. The trial court granted a divorce to the plaintiff, from which the defendant now appeals.

On this appeal defendant urges two grounds for reversal: (1) that plaintiff failed to establish that he was an innocent party; and (2) that the court below relied on matters other than evidence produced in the case. We shall consider those contentions in reverse order.

I

■ With respect to the assignment that the court below relied on matters other than evidence produced in the case, defendant's complaint centers upon a letter written by the court to counsel advising them of his decision. The argument portion of defendant's brief makes it clear that defendant's point is not really that the trial court went outside the evidence, but rather consists of an argument that the trial court was unsympathetic to and declined to follow the legal doctrine of recrimination. Upon a careful study of the letter in question, we do not believe it to be subject to the criticism either as stated in defendant's "points relied on" or in the argument portion of her brief.

■ However, it is unnecessary to pursue that question, since the proper interpretation of the trial court's letter is not controlling on this appeal. Our review of this case is governed by Civil Rule 73.-01(d) V.A.M.R., which provides that "the appellate court shall review the case upon both the law and the evidence as in suits of an equitable nature". Rogers v. Rogers, Mo.App., 399 S.W.2d 606; In re Spencer, Mo.App., 439 S.W.2d 8; and Nahm v. Nahm, Mo.App., 477 S.W.2d 713. Therefore, this court is in no way bound by the letter in question written by the court below. We must affirm if the result reached is correct on any theory. Oliver v. Fisher, Mo.App., 430 S.W.2d 611.

The real issue to be considered is, therefore, whether under the evidence the doctrine of recrimination applies. This is the precise question presented by defendant's other assignment of error, to which we now turn.

II

■ Whether plaintiff was an "innocent party" within the meaning of the doctrine of recrimination, requires a review of all of the pertinent evidence, since this is a matter which must be determined on the facts of each particular case. Markham v. Markham, Mo.App., 429 S.W.2d 320. Defendant claims that plaintiff was not an innocent party because of his relationship with Mrs. Lillie Fox. The basic facts of that relationship are essentially undisputed.

■ During the period of time that the parties lived together as husband and wife, before their separation, they were both friends of Foley and Lillie Fox. On Janu-

ary 1, 1968, Foley Fox died. Thereafter, plaintiff helped out with a few tasks around the Fox house on a few occasions. This help was rendered by the plaintiff over the protest of the defendant. Defendant argues that this assistance given to another woman, over her protests, while she was still plaintiff's wife and living together with him as such, was such an affront to her as to constitute an indignity and is ground for applying the doctrine of recrimination. In support of this contention, defendant cites R—— v. M——, Mo. App., 383 S.W.2d 894.

The facts in R—— v. M—— were vastly different from those here. In that case, the husband was a funeral director who continued in business with his first wife after their divorce. When he remarried, he brought his new wife to live in the funeral home, while his former wife also had residence quarters there. Further, the husband rearranged his business affairs in accordance with the desires of his former wife, in a manner which gave her a financial advantage over the interests of the new wife and her children. The close proximity of all those parties under the same roof and all dependent upon the same business, created a situation which led to friction and even physical fighting between the two women. Those circumstances bear no relationship to and give no guidance in the present situation.

We find that the acts by plaintiff now under consideration were merely decent neighborly acts by him to a recently widowed friend of the family. As shown by the evidence, defendant's objection in this instance was akin to her suspicions of other women which she had voiced constantly during the marriage and which constituted one of the grounds upon which the plaintiff was granted the divorce by the court below. Defendant cannot be heard to say that plaintiff's refusal to capitulate to her unwarranted complaints should be turned into a basis upon which to make plaintiff forfeit his right to judicial relief herein.

The foregoing is the only conduct by the plaintiff prior to the separation to which the defendant can point as having been "wrongful". However, the main focus of defendant's attack is upon the actions taken by plaintiff following the separation. The evidence is that after many years of constant nagging, complaints and arguments, plaintiff finally left the home on October 9, 1968. The parties have been separated ever since.

After the separation, plaintiff first moved in with his married daughter Lynn, with whom he lived until December, 1968. Then he moved to an apartment, where he lived until September, 1969. On the latter date, he moved to a 7′ X 12′ trailer on the Beechler property. Mrs. Beechler testified that it was about this time that her husband became unable to perform his regular duties and plaintiff moved onto the property in order to help out with the livestock. He did not pay rent in cash, but worked out the rent through the performance of services.

In the meantime, Mrs. Fox had moved to a small house on the Beechler property in November, 1968, some ten months prior to the time of plaintiff's taking up residence in the trailer. After plaintiff moved to the Beechler property in September, 1969, there were three parties living there in close proximity: Mr. and Mrs. Beechler in one house, Mrs. Fox in another house, and plaintiff in the trailer.

The evidence shows that there was some considerable association between plaintiff and Mrs. Fox throughout the period following his separation from defendant. Some of this took place even before they both became residents on the Beechler property. For example, there is testimony that plaintiff visited Mrs. Fox the same morning that he finally separated from defendant. There is testimony that plaintiff and Mrs. Fox drove together in her car on various occasions. It is undisputed that plaintiff, together with Mrs. Fox's son, helped move her furniture when she moved

from her former home to the house which she rented from the Beechlers. It is also undisputed that plaintiff lent certain small sums of money to Mrs. Fox, which she repaid; and plaintiff went with Mrs. Fox on two occasions to visit her son, who was attending college in Springfield, Missouri.

After plaintiff and Mrs. Fox were both residents on the Beechler property, the association between them became closer. Plaintiff had no bathing facilities in the trailer and Mrs. Fox permitted him to bathe in her house when she was not at home. She also did some laundry for him. There was also an arrangement whereby plaintiff connected to her utilities and he shared the utility costs. Plaintiff was in Mrs. Fox's home many evenings playing cards and watching television. A letter was introduced into evidence from plaintiff to his daughter Carol, in which he stated that he had been accepted into the Fox family circle by Mrs. Fox's children, and he hoped that Carol would likewise permit Mrs. Fox to become a similar friend to her. In the same letter, plaintiff offered to drive Carol to school, but only on the condition that Mrs. Fox accompany them. Still further, both plaintiff and Mrs. Fox testified that they had discussed the possibility of marriage if he were granted a divorce.

Defendant introduced further testimony from which she would have the court infer the existence of an immoral affair between plaintiff and Mrs. Fox. The daughter Carol testified that when she visited the Fox house, she saw plaintiff's underclothes, toiletries and his back brace in one of the bedrooms. This may be explained by the arrangement under which plaintiff bathed in the Fox house. Defendant also introduced testimony to the fact that in the early part of 1969, plaintiff's truck had been seen outside Mrs. Fox's home parked all night. However, that evidence was countered by the testimony of Mrs. Fox's son Gary, who explained that during the period in question, he worked with plaintiff and often borrowed plaintiff's truck,

which he took to his mother's home and left parked overnight while in his use.

Both plaintiff and Mrs. Fox took the stand and denied flatly under oath that they were engaged in any affair or had had any immoral relationships. This denial was substantiated by the testimony of Mrs. Beechler, who lived in very close proximity and would have been in a position to know of any illicit actions if they had occurred.

The questions for decision is whether this state of affairs adds up to the character of conduct which will forfeit plaintiff's right to a divorce. Although we have been cited to and our independent research has disclosed no case close on the facts, we do have the benefit of certain general principles and illustrations thereof in Missouri cases. Thus, in J. v. K., Mo.App., 419 S. W.2d 461, and in R—— v. M——, Mo. App., 383 S.W.2d 894, it was held that association by a spouse with a member of the opposite sex may constitute an "indignity" even though no sexual intercourse be shown. However, the facts of those cases were far different and more objectionable than plaintiff's conduct in our case. On the other hand, in Wehmeier v. Wehmeier, Mo.App., 447 S.W.2d 816, the St. Louis Court of Appeals could find nothing improper in a husband, after separation from his wife, having dates with another woman. It appears that the factual situation of this case falls somewhere in between the situations involved in the cases cited, but we believe that this case falls closer in that spectrum to the Wehmeier situation.

■ On a careful evaluation of the particular factual situation shown by the evidence here, we hold that plaintiff's conduct is not so damning as to prevent the denial of judicial relief to him by way of divorce. The factors which lead us to this conclusion are as follows:

■ 1. The separation of the parties in this case was caused by defendant's fault. When plaintiff was driven from home by

the intolerable situation which resulted from defendant's conduct, he was not required to forego reasonable association with that half of the human race consisting of women. In judging what association is to be considered reasonable, some closer degree of relationship may be approved where the separation was caused by his wife's fault than would be true if the separation had been plaintiff's own fault. See Wehmeier v. Wehmeier, 447 S.W.2d 816, and Jenkins v. Jenkins, Mo.App., 396 S.W.2d 268.

2. Plaintiff is a low income individual who must live in accordance with his modest means. He is a logger, using his own truck. In the year 1969 he earned only a little over $2,000.00 after expenses. It is therefore understandable why he was quick to accept a situation in which he could work out his rent through performance of services to the Beechlers. It is also understandable why he would welcome an opportunity to share utility costs with Mrs. Fox and even make arrangements for making part-time use of bathroom facilities during her absence from the house at work.

3. An important fact of this situation is that plaintiff and Mrs. Fox did have separate living establishments. In this respect, the situation is different from cases where a spouse lives under the same roof with a person of the opposite sex and, therefore, has special opportunity for sexual infidelity, whether or not illicit sexual intercourse did in fact occur. See and compare J. v. K., Mo.App., 419 S.W.2d 461, and R—— v. M——, Mo.App., 383 S.W.2d 894.

4. There was nothing hidden, furtive or clandestine, in the conduct by plaintiff and Mrs. Fox. Everything they have done has been open and aboveboard, and to a very large extent has involved the active participation of their respective grown children. The record in this case reflects what is basically a circumspect relationship between respectable middle-aged people who have been close personal friends for many years. Certainly, there is nothing censurable about the plaintiff discussing the proposition of marriage with Mrs. Fox in the event he should be successful in obtaining this divorce from a marriage which obviously had already been irrevocably terminated in fact.

The judgment of the court below is affirmed.